Filed 08/15/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JODY CHATMAN,<br><br>  Defendant and Appellant. | A144196<br><br>(Alameda County<br>Super. Ct. No. C140542) |

Jody Chatman appeals from the trial court's denial of his petition for a certificate of rehabilitation under Penal Code section 4852.01.[1] The trial court denied the petition because the statute denies certificate eligibility to felons, such as Chatman, who have completed a sentence of *probation* (former felony probationers) and are subsequently incarcerated. Chatman contends that the statute denies his rights to equal protection because it grants certificate eligibility to felons who have completed a *prison* sentence (former felony prisoners) and are subsequently incarcerated. We agree. While it might make sense to deny certificate eligibility to all subsequently incarcerated former felons, we have been offered, and we can discern, no rationale to deny certificate eligibility only to those who have served sentences of probation. We therefore reverse the trial court's order and remand for a consideration of the merits of Chatman's petition.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In 2001, Chatman pleaded no contest to a felony count of robbery (§ 211), and he was placed on five years' probation. About two years later, he was convicted of

---

[1] All statutory references are to the Penal Code unless otherwise specified.

misdemeanor reckless driving with alcohol involved (Veh. Code, § 23103). He eventually successfully applied under section 1203.4 to have both his convictions dismissed. The reckless driving conviction was dismissed in 2006, and the robbery conviction was dismissed in 2007.

In June 2008, Chatman was convicted of another misdemeanor, driving under the influence (Veh. Code, § 23152, subd. (b)). He was placed under three years' probation with a condition that he serve 10 days in jail. Unlike Chatman's previous convictions, this one was never dismissed under section 1203.4.

Starting around 2011, Chatman volunteered at a youth center. An executive director of a community organization became familiar with Chatman's efforts there and offered Chatman a job as an administrator of a group home for foster and delinquent youth. Chatman was statutorily ineligible for the position, however, because of his felony conviction. (Health & Saf. Code, § 1522, subds. (a), (d).) Seeking to avail himself of a statutory exemption from ineligibility, Chatman applied for a certificate of rehabilitation in October 2014. (Health & Saf. Code, § 1522, subd. (g)(1)(A)(ii).)

In his petition under section 4852.01, Chatman acknowledged that the statute rendered him ineligible for the certificate because he was a former felony probationer who had spent time in jail after obtaining dismissals of his prior convictions. But he argued that his ineligibility violated his right to equal protection. The People opposed the petition and argued that Chatman's equal protection claim was foreclosed by *People v. Jones* (1985) 176 Cal.App.3d 120, 128 (*Jones*). The trial court agreed that *Jones* was dispositive and denied the petition for a certificate of rehabilitation.

## II.
### DISCUSSION

*A.*      *Felons May Seek Relief from Disabilities Resulting from Their Convictions.*

Convicted felons are "uniquely burdened by a collection of statutorily imposed disabilities." (*People v. Moreno* (2014) 231 Cal.App.4th 934, 942–943.) " 'Upon [their] release from prison, . . . ex-felon[s] cannot simply resume the life [they] led before prison as if nothing had happened. Besides the well-known informal discriminations, [they] confront[] a battery of statutory disabilities . . .' such as the loss of the right to vote, the inability to serve on petit or grand juries, and in some instances the inability to possess a concealable weapon. [Citation.]" (*Ibid.*) They may also be impeached as witnesses, and their prior convictions may be used to enhance subsequent criminal sentences. (*Ibid.*) And, as Chatman discovered, convicted felons are barred from certain occupations.

The Legislature has enacted several methods for felons to remove or reduce these disabilities. One method allows felons who successfully completed a sentence of probation, such as Chatman, to have their conviction set aside and the underlying charges dismissed (§ 1203.4), which is often a step in seeking further relief. (E.g., § 4852.01, subd. (b).) Another method allows felons to seek a pardon from the Governor on the grounds that they either are rehabilitated or are innocent. (Cal. Const., art. V, § 8; see generally 5 Erwin et al., Cal. Criminal Defense Practice (LexisNexis 2016) Executive Clemency, § 105.03[1], p. 105-6.) Yet another method—the subject of this appeal— allows rehabilitated felons to petition for a certificate of rehabilitation under section 4852.01. Typically, felons petition for a certificate of rehabilitation before seeking a pardon from the Governor. (5 Erwin, at § 105.03[1], p. 105-6.)

A certificate of rehabilitation "is available to convicted felons who have successfully completed their sentences, and who have undergone an additional and sustained 'period of rehabilitation' in California. (§ 4852.03, subd. (a) [imposing general minimum requirement of five years' residence in this state, plus an additional period typically ranging between two and five years depending upon the conviction]; see §§ 4852.01, subds. (a)-(c), 4852.06.) During the period of rehabilitation, the person must

display good moral character, and must behave in an honest, industrious, and law-abiding manner.  (§ 4852.05; see § 4852.06.)" (*People v. Ansell* (2001) 25 Cal.4th 868, 875.)  A certificate is not available to persons serving a mandatory life parole, persons who have been sentenced to death, persons who have been convicted of various serious crimes, or persons in the military.  (§ 4852.01, subd. (c).)  "[T]he purpose of section 4852.01 is to afford an avenue for felons who have proved their rehabilitation to reacquire lost civil and political rights of citizenship." (*People v. Moreno*, *supra*, 231 Cal.App.4th at p. 943.)

A certificate of rehabilitation certifies that a felon "has demonstrated by his or her course of conduct his or her rehabilitation and his or her fitness to exercise all of the civil and political rights of citizenship." (§ 4852.13, subd. (a).)  Such a certificate serves as an application for a full pardon upon receipt by the Governor (§ 4852.16), and it recommends that the Governor grant a full pardon to the petitioner (§ 4852.13, subd. (a)). (See *People v. Ansell*, *supra*, 25 Cal.4th at p. 876.)  Some statutes provide that certain disabilities resulting from a felony conviction are removed by a Governor's pardon, while other statutes provide that certain disabilities are removed by the issuance of a certificate of rehabilitation alone.  (*Id.* at p. 877 & fns. 16-17, and statutes cited therein.)  Chatman wants relief under the latter type of statute, whereby he would qualify for an exemption from a disqualification for a license to work in a group home by securing a certificate of rehabilitation, with no requirement he also secure a pardon from the Governor. (Health & Saf. Code, § 1522, subd. (g)(1)(A)(ii).)

The basis of Chatman's equal protection claim involves one eligibility differentiation for a certificate of rehabilitation.  Section 4852.01, subdivision (b), covers former felony probationers such as Chatman and provides:  "A person convicted of a felony . . . , the accusatory pleading of which has been dismissed pursuant to Section 1203.4, may file a petition for certificate of rehabilitation and pardon pursuant to the provisions of this chapter if the petitioner has not been incarcerated in a prison, jail, detention facility, or other penal institution or agency since the dismissal of the

4

accusatory pleading,[2] is not on probation for the commission of any other felony, and the petitioner presents satisfactory evidence of five years' residence in this state prior to the filing of the petition." Chatman is ineligible for a certificate of rehabilitation under this subdivision because, although he obtained a dismissal of the pleading underlying his felony conviction (§ 1203.4), he was subsequently incarcerated after he was ordered to spend 10 days in jail when he was again granted probation for his 2008 misdemeanor conviction of driving under the influence.

In contrast to section 4852.01, subdivision (b), subdivision (a) of the statute provides that "[a] person convicted of a felony who is committed to a state prison or other institution or agency, including commitment to a county jail pursuant to subdivision (h) of Section 1170, may file a petition for a certificate of rehabilitation and pardon pursuant to the provisions of this chapter." In other words, former felony prisoners may petition for a certificate of rehabilitation, with no requirement that they remain free from incarceration after the completion of their state-prison sentence (or sentence to county jail under section 1170, subdivision (h)).

B.       *Challenges to Laws Under the Equal Protection Clause.*

With this eligibility distinction in mind, we turn to discuss the well-established standards governing a challenge to a statute on equal protection grounds.[3] " ' "The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." ' [Citation.] 'The first prerequisite to a meritorious claim under the equal

---

[2] This provision broadly applies to people who were "incarcerated," without specifying that they were actually convicted of the offenses underlying their incarceration. Section 4852.01 was amended and its subdivisions renumbered effective January 1, 2016 (after the trial court ruled on Chatman's petition), in ways that do not affect this court's analysis. Our citations are to the current version of the statute.

[3] While our state Supreme Court can construe the California Constitution independent from the federal Constitution, there is no reason to suppose that an analysis under the federal equal protection clause in a case, such as this one, that involves the consequences flowing from different convictions would lead to a result other than the result reached under a state analysis. (*Johnson v. Department of Justice* (2015) 60 Cal. 4th 871, 881.)

protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253, original italics; see also *In re Eric J.* (1979) 25 Cal.3d 522, 530.) "In other words, we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (*People v. McKee* (2010) 47 Cal.4th 1172, 1202.) If an equal protection claim does not satisfy this preliminary requirement, the argument must fail. (*Cooley*, at p. 254.)

If two groups are sufficiently similar with respect to the law being challenged, we consider whether disparate treatment of the two groups is justified. (*People v. McKee*, *supra*, 47 Cal.4th at p. 1207.) The state "is required to give some justification for th[e] differential treatment." (*Id.* at p. 1203.) "Unless the law treats similarly situated persons differently on the basis of race, gender, or some other criteria calling for heightened scrutiny, we review the legislation to determine whether the legislative classification bears a rational relationship to a legitimate state purpose." (*People v. Moreno*, *supra*, 231 Cal.App.4th at p. 939.) " 'This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored . . . , a court may engage in " 'rational speculation' " as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record." ' [Citation.] To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, courts may not second-guess its ' "wisdom, fairness, or logic." ' [Citations.]" (*Johnson v. Department of Justice*, *supra*, 60 Cal.4th at p. 881.)

C.	*There Is No Rational Basis for Denying Eligibility for Certificates of Rehabilitation to Subsequently Incarcerated Former Felony Probationers While Granting Eligibility to Subsequently Incarcerated Former Felony Prisoners.*

This case is not the first time a court has considered the constitutionality of the eligibility discrepancy between subsequently incarcerated former felony probationers and subsequently incarcerated former felony prisoners. In *Jones*, *supra*, 176 Cal.App.3d 120, the defendant, like Chatman, was convicted of a felony, served a sentence of probation, and later obtained a dismissal under section 1203.4. (*Jones*, at p. 125.) After the dismissal, the defendant was jailed for a short time (about 15 days) in connection with other offences. (*Ibid.*) He was therefore ineligible for a certificate of rehabilitation under section 4852.01, former subdivision (c), now subdivision (b). (*Jones*, at p. 125.) As Chatman argues here, he contended that as a subsequently incarcerated former felony probationer he was similarly situated with subsequently incarcerated former felony prisoners for purposes of certificate eligibility. (*Ibid.*)

*Jones* rejected his argument. In concluding that these two classes were not similarly situated, it observed that "separate and distinct statutory procedures" apply to former probationers and former parolees. (*Jones*, *supra*, 176 Cal.App.3d at pp. 127-128.) In reaching its conclusion, the court quoted heavily from *People v. Borja* (1980) 110 Cal.App.3d 378, in which Division Two of this court held that section 1203.4, which allows probationers to vacate their convictions, did not apply to the defendant who had spent time in prison and was later discharged from parole. (*Borja*, at pp. 380-381.) *Borja* did not involve an equal protection analysis, but it instead involved a question of statutory interpretation: whether a felon who has been sentenced to prison can take advantage of section 1203.4, which applies to former probationers and does not mention parolees. (*Borja* at pp. 381-382.) After relying on *Borja* to highlight all the procedural differences between parole and probation, *Jones* concluded "that former probationers do not have the same status and, therefore, are not similarly situated with former state prisoners (and those discharged from parole) *for purposes of applying section 1203.4.*" (*Jones*, at p. 128, italics added.)

7

In our view, this passage from *Jones* simply makes the uncontroversial point that the relief provided under section 1203.4's plain language—i.e., the ability to have a sentence vacated—is not similarly available to former state prisoners and former probationers. But equal protection analysis does not ask whether different groups are similarly situated for *all purposes*; it asks instead whether they are similarly situated *for purposes of the law challenged*—in this case section 4852.01, not section 1203.4. (*Cooley v. Superior Court*, *supra*, 29 Cal.4th at p. 253.)

Although *Jones* next asserted that there is a rational basis for treating former felony prisoners and former felony probationers differently under section 4852.01 (*Jones*, *supra*, 176 Cal.App.3d at pp. 128, 131), it did not articulate a rationale to support the assertion. Instead, the court examined "the purpose of section 1203.4 and its relation with section 4852.01." (*Id.* at p. 128.) It found the restriction preventing former felony probationers from obtaining dismissals when they are currently serving a sentence (§ 1203.4, subd. (a)(1)) to be similar to, and consistent with, the restriction preventing former felony probationers from obtaining a certificate of rehabilitation if they were incarcerated subsequent to the dismissal of their felony case. (*Jones*, at p. 129; see current § 4852.01, subd. (b).) It further found that former felony prisoners are not similarly situated with former probationers because former prisoners have not previously benefited from dismissal of their charges and "bear the full onus and stigma of ex-convicts that former probationers who have previously obtained section 1203.4 relief do not share." (*Jones,* at pp. 129-130.) But this observation is merely another way of saying that these groups are not identical and face different procedural requirements to obtain a certificate of rehabilitation. Indeed, as *Jones* explained, the Legislature had "established two separate and distinct procedures in sections 1203.4 and 4852.01 for ex-felons who seek relief from criminal penalties and disabilities and seek a restoration of their civil rights and the opportunity to obtain a pardon." (*Id.* at p. 130.) When read together, the two procedures "can be seen to form part of the broad statutory scheme for rehabilitation and restoration of rights attending relief from criminal penalties and disabilities to all ex-

8

felons by setting forth the criteria of rehabilitation that the Legislature has deemed appropriate for these two classifications of former offenders." (*Id.* at p. 131.)

We do not think it follows that former felony prisoners and former felony probationers are dissimilarly situated for equal protection purposes just because they are required to use different procedures to petition for a certificate of rehabilitation under section 4852.01. Both groups are convicted felons seeking certificates of rehabilitation to reduce the disabilities that resulted from their prior convictions. We conclude, contrary to *Jones*, *supra*, 176 Cal.App.3d at page 128, that these two groups *are* similarly situated for purposes of section 4852.01.

We therefore turn to examine whether there is a rational basis for denying certificates of rehabilitation to former felony probationers, but not former prisoners, who are subsequently incarcerated. (E.g., *Newland v. Board of Governors* (1977) 19 Cal.3d 705, 707-708, 711 (*Newland*) [no rational basis under equal protection clause to permit felons, but not misdemeanants, to seek certificate of rehabilitation under § 4852.01]; *Jones*, *supra*, 176 Cal.App.3d at p. 128 [applying rational-relationship standard].) In doing so, we must consider whether the classification bears some rational relationship to a conceivable legitimate state purpose or that the classification rests upon a ground of difference having a fair and substantial relationship to the object of the legislation. (*Newland*, at p. 711.) We conclude that the classification does neither.

*Jones* concluded that "a rational relationship exists between the criteria of eligibility for a certificate of rehabilitation for these two classes of ex-felons and the state's legitimate purpose of rehabilitating and restoring rights to ex-felons who are not similarly situated." (*Jones*, *supra*, 176 Cal.App.3d at p. 131.) But while *Jones* pointed out that the Legislature has established different eligibility prerequisites for these two classes, it failed to articulate a *rationale* for the different treatment. (Cf. *People v. McKee*, *supra*, 47 Cal.4th at pp. 1207-1208 [remanding to trial court to determine whether differential treatment of two types of civil commitment was justified].) We consider it circular to suggest that disparate treatment of two groups is justified because the two groups are treated differently.

9

The Attorney General in this appeal similarly fails to offer a rationale for the differential treatment, except to repeat the observations contained in *Jones*, *supra*, 176 Cal.App.3d 120 and to contend that the case is "settled law." True, that case was decided more than 30 years ago and addressed the identical question presented here. But it never articulated a rational basis for the differential treatment, and the Attorney General all but recognizes as much by declaring that *Jones* "identified a 'reasonably conceivable state of facts that could provide a rational basis for the classification' (*FCC v. Beach Communications, Inc.* [(1993) 508 U.S. 307,] 313[])," without explaining what that rational basis was.

We recognize that rational basis review in this context is deferential. " '[W]e must accept any gross generalizations and rough accommodations that the Legislature seems to have made.' " (*Johnson v. Department of Justice*, *supra*, 60 Cal.4th at p. 887.) "A statute is *presumed constitutional . . .* , and 'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it,' [citations], whether or not the basis has a foundation in the record." (*Heller v. Doe* (1993) 509 U.S. 312, 320-321, italics added.) But the state must at some point proffer *some* justification for the differential treatment (*People v. McKee*, *supra*, 47 Cal.4th at p. 1203), and it has not done so here.

Our conclusion that the statutory scheme governing eligibility for certificates of rehabilitation denies Chatman his rights to equal protection is supported by our Supreme Court's decision in *Newland*, *supra*, 19 Cal.3d 705. In *Newland*, the petitioner had been convicted of a misdemeanor violation of lewd conduct in a public place (§ 647, subd. (a)) and had obtained a dismissal of the charges under section 1203.4 after a brief period of summary probation that did not include jail time. (*Newland*, at pp. 707-709.) He later applied for a community-college credential, but his application was rejected because a former provision of the Education Code barred credentials to anyone convicted of a sex offense. (*Ibid.*) The statute allowed applicants to obtain a credential if they obtained a certificate of rehabilitation, but this meant that only people convicted of a felony

10

qualified while people convicted of a misdemeanor, such as the petitioner in *Newland*, did not. (*Id.* at pp. 709-710, 712.)

*Newland* held that there was no rational reason to treat misdemeanants more harshly than felons for purposes of obtaining community-college credentials: "Because a misdemeanant is not eligible to petition for a certificate of rehabilitation, the [Education Code provision that permitted felons to seek a certificate of rehabilitation] works the Kafka-like perverse effect of providing that a person convicted of a *felony* sex crime who applies for a certificate of rehabilitation and who is otherwise fit, can obtain certification to teach in the community college system but that an otherwise fit person, convicted of a *misdemeanor* sex crime, is forever barred. This statutory discrimination against misdemeanants can claim no rational relationship to the protective purpose of [the provision of the Education Code regarding credentials]." (*Newland*, *supra*, 19 Cal.3d at p. 712, original italics.)

The same perverse effects are at play here. A subsequently incarcerated felon is eligible for a certificate of rehabilitation if he or she originally served a sentence of imprisonment and meets other requirements. (§ 4852.01, subd. (a).) But a subsequently incarcerated felon is ineligible for a such a certificate if he or she was originally sentenced to probation, successfully completed it, and obtained a dismissal under section 1203.4. (§ 4852.01, subd. (b).) We discern no rational justification for this different treatment.[4]

In *Newland*, the Attorney General "virtually concede[d] that if [former] Education Code section 13220.16 and Penal Code section 4852.01 together work[ed] to deny misdemeanants relief available to felons, that discrimination *render[ed] either or both*

---

[4] The Legislature is of course free to disqualify certain felons it deems incapable of being rehabilitated. We express no opinion on whether there would be a justification for denying certificate eligibility to *both* former felony probationers *and* former felony prisoners who are subsequently incarcerated. (E.g., *Johnson v. Department of Justice*, *supra*, 60 Cal.4th at pp. 878, 884.) We similarly express no opinion on whether there would be a rational basis for granting certificate eligibility to former felony probationers, but not to former felony prisoners, who are subsequently incarcerated.

11

*statutes unconstitutional.*"  (*Newland*, *supra*, 19 Cal.3d at p. 713, italics added.)  In this appeal, however, respondent claims that the constitutionality of section 4852.01 was "not at issue" in *Newland* and that *Newland* is "certainly irrelevant" to Chatman's current equal protection challenge to the statute.  To the contrary, *Newland* addressed how section 4852.01 worked together with the Education Code to deprive applicants of community-college credentials, which is directly relevant here in evaluating whether section 4852.01 works together with the Health and Safety Code to deprive former felony probationers of the opportunity to qualify for a community-care license.

Because Chatman has established that the statutory scheme denied him equal protection, we remand to the trial court with directions to consider the merits of Chatman's petition for a certificate of rehabilitation.  Nothing in this opinion shall be viewed as expressing an opinion on whether the court should grant Chatman's petition, a question the trial court never reached because it concluded that Chatman was not otherwise qualified to seek one.  And nothing in this opinion should be viewed as expressing an opinion on whether Chatman is otherwise barred from obtaining a community-care license because he was convicted of a "crime against an individual" under Health and Safety Code section 1522, subdivision (g)(1)(A)(i), an argument that the People raised below but that has not been raised on appeal.  Whether Chatman will qualify to receive such a license is immaterial to whether the statutory distinctions rendering him ineligible to be considered for a certificate of rehabilitation violate equal protection.

### III.
#### DISPOSITION

The trial court's order denying Chatman's petition for a certificate of rehabilitation is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

12

_____
Humes, P.J.

We concur:


_____
Margulies, J.


_____
Dondero, J.


*People v. Chatman* (A144196)

13

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable Paul DeLucchi |
| Counsel for Appellant: | David Reagan |
| Counsel for Respondent: | Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Acting Senior Assistant Attorney General, Seth K. Schalit, Supervising Deputy Attorney General, Kevin Kiley, Deputy Attorney General |