Filed 11/23/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JERRY DENTON WILLIAMS, JR.,<br><br>     Defendant and Appellant. | A159914<br><br>(Sonoma County<br>Super. Ct. No. PRL-201698-1) |

Jerry Denton Williams, Jr., was convicted of murder in 1995 and sentenced to 30 years to life in prison. He was released on lifetime parole in 2018, but the following year, he was charged with two misdemeanors, and the district attorney filed a petition to revoke his parole. After a contested hearing, the trial court determined that Williams had committed one of the charged offenses and remanded him to prison, the required sanction whenever a court finds that a lifetime parolee has violated parole. (Pen. Code, § 3000.08, subd. (h) (section 3000.08(h).)[1]

On appeal, Williams claims the trial court erred by refusing to refer the matter to the parole agency for a written report before ruling on the petition. We agree. Under the plain terms of section 1203.2, subdivision (b)(1) (section 1203.2(b)(1)), a court is required to receive a parole agency's written report before ruling on a parole revocation petition initiated by a district attorney. There is no implied exception to this requirement when such a

---

[1] All further statutory references are to the Penal Code.

petition is filed against a lifetime parolee such as Williams, because the report is not pointless even though a court has no discretion to impose intermediate sanctions.

As Williams concedes, this appeal is moot because he has since been paroled again.  (See *People v. DeLeon* (2017) 3 Cal.5th 640, 645–646 [finding of "parole violation does not constitute a disadvantageous collateral consequence for purposes of assessing mootness"].)  Nevertheless, we agree with him that the issue is of continuing public interest and likely to recur yet evade appellate review, and the Attorney General does not argue otherwise.  Therefore, we " 'exercise [our] discretion to decide the issue for the guidance of future proceedings before dismissing the case as moot.' "[2]  (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 321; see, e.g., *DeLeon*, at p. 646; *People v. Castel* (2017) 12 Cal.App.5th 1321, 1325 (*Castel*).)

I.
FACTUAL AND PROCEDURAL
BACKGROUND

In 1995, after a jury convicted Williams of one count of first degree murder and found true that he personally used a firearm, he was sentenced to 30 years to life in prison.[3]  He was released from prison in June 2018 and placed on lifetime parole, as required based on his indeterminate sentence for murder.  (§ 3000.1, subd. (a)(1).)

Approximately 18 months later, on December 1, 2019, a Rohnert Park police officer pulled over the vehicle in which Williams was a passenger.  The

---

[2] Given this disposition, we need not address the Attorney General's argument that even if the trial court was required to obtain a written report, the requirement is directory only and the failure to comply with it did not invalidate the order revoking Williams's parole.

[3] Division Two of this court subsequently affirmed the judgment. (*People v. Williams* (Mar. 27, 1997, A070508) [nonpub. opn.].)

officer performed a parole search and found a methamphetamine pipe in Williams's jacket. During the booking process at jail, the officer discovered Williams had a credit card in a different name in his wallet.

Two days later, the Sonoma County District Attorney filed a complaint charging Williams with two misdemeanors, petty theft of lost property and possession of drug paraphernalia.[4] On the same date, the district attorney also filed a petition to revoke parole under sections 1203.2 and 3000.08, alleging that Williams violated his parole conditions by committing the misdemeanors. The trial court summarily revoked parole and set a parole violation hearing.

On January 9, 2020, the date set for the violation hearing, Williams moved to continue the hearing because the trial court had failed "to refer the petition to the parole agency for a written report to justify the reasons why intermediate sanctions were not employed," as required under section 1203.2(b)(1). After a discussion with counsel at the hearing's outset, the court noted it was "a somewhat novel issue" whether section 1203.2(b)(1) requires "a report from parole regarding intermediate sanctions on a person who is on a lifetime grant of parole." The court decided to go forward with the evidentiary portion of the hearing "so that at the very least should the Court be required under [section] 3000.08(h) to simply make a finding and then refer the matter to the Board of Parole, that part will be done and we won't have wasted today's calendar call, but should [section] 1203.2 govern, the Court will not make any findings today with regard to the evidence and the Court will make the appropriate referral. [¶] And then what the Court

---

[4] The charges were brought under section 485 (petty theft) and Health and Safety Code section 11364, subdivision (a) (possession of drug paraphernalia).

will do is put the matter over two to three weeks at counsels' convenience so the Court can do its own research and try to parse this out."

Despite indicating it would not make findings on whether Williams violated his parole conditions, the trial court did so after the evidence was presented. It rejected the petty-theft allegation but found that Williams had possessed drug paraphernalia and therefore violated parole. It then asked for supplemental briefing "to guide this Court on what to do with the next step, whether that is to refer the matter to parole for possible intermediate sanctions or to directly refer the matter back to the Board of Parole[]."

In February 2020, after the trial court received the parties' supplemental briefs, it concluded that section 1203.2(b)(1) did not require it to obtain a written report. Although the court acknowledged the statute's "mandatory shall language" and the absence of "an exception for a lifetime parolee," it concluded that it would be "an absurd result" to have to refer Williams's case to parole for a report. The court explained that if it did so, the resulting report would "be of zero utility because I can't exercise any discretion based on the recommendations contained therein." The court therefore remanded Williams to prison custody "for further proceedings regarding any parole revocation." Williams appealed the order.

A few months later, on June 30, 2020, the Board of Parole Hearings found Williams suitable for parole, and he was released from prison. As far as this court is aware, he is not currently incarcerated.[5]

---

[5] We grant Williams's unopposed request for judicial notice of his appellate counsel's declaration regarding his parole status and a portion of his California Department of Corrections and Rehabilitation (CDCR) online profile showing past Board of Parole Hearing actions.

4

## II.
### DISCUSSION

*A.    The Law Governing Petitions to Revoke Parole*

When defendants convicted of certain offenses, including murder, are released from prison, they are placed on parole under the supervision of CDCR.  (§ 3000.08, subds. (a), (i); *Castel*, *supra*, 12 Cal.App.5th at p. 1325; see § 667.5, subd. (c)(1).)  Either the parole agency or the district attorney may file a petition to revoke parole.  (§ 1203.2, subds. (a), (b)(1); *Castel*, at p. 1325.)  "[T]he district attorney generally seeks parole revocation as the result of parolees' criminal conduct," whereas the parole agency tends to do so as a result of "more minor or technical violations."  (*People v. Zamudio* (2017) 12 Cal.App.5th 8, 16–17 (*Zamudio*).)  "Although it is possible for [the parole] agency to file a revocation based on allegations of criminal conduct, by and large the two [types of petitions] involve different degrees of parole violations."  (*Castel*, *supra*, 12 Cal.App.5th at pp. 1327–1328.)  The relevant rules and procedures differ depending on which entity files the petition.

We begin with petitions filed by the parole agency.  Upon learning of a potential parole violation supported by good cause, the parole agency "may impose additional and appropriate conditions of supervision, including rehabilitation and treatment services and appropriate incentives for compliance, and impose immediate, structured, and intermediate sanctions for parole violations, including flash incarceration in a city or a county jail."  (§ 3000.08, subd. (d).)  But if the parole agency concludes "following application of its assessment processes . . . that intermediate sanctions up to and including flash incarceration are not appropriate," it must file a petition to revoke parole in the trial court.  (§ 3000.08, subd. (f).)

Every revocation petition filed by the parole agency must "include a written report that contains additional information regarding the petition,

5

including the relevant terms and conditions of parole, the circumstances of the alleged underlying violation, the history and background of the parolee, and any recommendations." (§ 3000.08, subd. (f); Cal. Rules of Court, rule 4.541(c).)[6] In addition, the report "must include the reasons for that agency's determination that intermediate sanctions without court intervention as authorized by Penal Code section[] 3000.08(f) . . . are inappropriate responses to the alleged violations." (Rule 4.541(e).) "Pursuant to . . . section 3015, [CDCR] has developed a parole violation decisionmaking instrument (PVDMI), a form used to determine what sanctions should be imposed for a parole violation, and whether a petition to revoke parole should be filed."[7] (*People v. Osorio* (2015) 235 Cal.App.4th 1408, 1412 (*Osorio*), disapproved on another ground by *DeLeon*, *supra*, 3 Cal.5th at p. 646.) The explanation of why intermediate sanctions are inappropriate must "be 'individualized to the particular parolee, as opposed to a generic statement.' " (*Perlas*, *supra*, 47 Cal.App.5th at pp. 829, 832–833 [holding these requirements were satisfied in proceeding against lifetime parolee].)

A revocation petition filed by the district attorney, on the other hand, may be submitted without an accompanying report by the parole agency.

---

[6] All further rule references are to the California Rules of Court.

[7] "[The] PVDMI is 'a standardized tool that provides ranges of appropriate sanctions for parole violators given relevant case factors, including, but not limited to, offense history, risk of reoffense based on a validated risk assessment tool, need for treatment services, the number and type of current and prior parole violations, and other relevant statutory requirements.' (§ 3015, subd. (b)(1).) . . . [The] PVDMI ' "[i]dentifies the appropriate response to each violation based on the offender's risk level and the severity of the violation." ' [Citation.] Parole agents may recommend overriding the PVDMI-recommended response." (*People v. Perlas* (2020) 47 Cal.App.5th 826, 833, fn. 4 (*Perlas*).)

"[B]y its terms section 3000.08 applies only to parole revocation petitions filed by the 'supervising parole agency.' Similarly, rule 4.541 expressly applies to 'supervising agency petitions for revocation of . . . parole . . . .' (Rule 4.541(a).) Accordingly, the district attorney is not obligated to file revocation petitions with the written report mandated by those provisions, nor must the petition state why intermediate sanctions are not considered appropriate." (*Zamudio*, *supra*, 12 Cal.App.5th at p. 15.)

But while a written report need not accompany the petition, one is still required. Section 1203.2(b)(1) provides that after a petition is filed, "[t]he [trial] court shall refer . . . the petition to the . . . parole officer. After the receipt of a written report from the . . . parole officer, the court shall read and consider the report and . . . the petition and may modify, revoke, or terminate the supervision of the supervised person . . . if the interests of justice so require." Thus, once the court receives a DA-initiated petition, it must refer the petition to the parole agency for a written report, and it must consider that report before ruling on the petition. (*Ibid.*; *Zamudio*, *supra*, 12 Cal.App.5th at p. 15.)

As *Zamudio* observed, "section 1203.2 does not describe the contents of the written report" required when the district attorney files a revocation petition, "nor does it refer to, or incorporate, the minimum requirements for the report mandated by section 3000.08, subdivision (f)." (*Zamudio*, *supra*, 12 Cal.App.5th at p. 15.) But based on subdivision (g) of section 1203.2— which provides that the statute "does not affect the authority of the supervising agency to impose intermediate sanctions, including flash incarceration, to persons supervised on parole pursuant to Section 3000.[0]8"—*Zamudio* concluded that the report in DA-initiated proceedings "should include an intermediate sanctions assessment. Even if

7

not required by statute or the California Rules of Court, the best practice would be for the parole officer to address the appropriateness of intermediate sanctions to assist the court in exercising its discretion in the interest of justice. Such an assessment would also serve as a check on potentially overzealous deputy district attorneys or parole officers." (*Zamudio*, at p. 15; accord *People v. Kurianski* (2020) 54 Cal.App.5th 777, 781 (*Kurianski*).)

Generally, "[u]pon a finding that [a parolee] has violated the conditions of parole," the trial court is authorized "to do any of the following: [¶] (1) Return the person to parole supervision with modifications of conditions, if appropriate, including a period of incarceration in a county jail. [¶] (2) Revoke parole and order the person to confinement in a county jail. [¶] (3) Refer the person to a reentry court . . . or other evidence-based program in the court's discretion." (§ 3000.08, subd. (f).) These options do not exist when the court adjudicates a petition concerning a lifetime parolee, such as Williams. Rather, "[n]otwithstanding any other law, if . . . the court determines that [such a] person has committed a violation of law or violated [the person's] conditions of parole, the person on parole shall be remanded to the custody of [CDCR] and the jurisdiction of the Board of Parole Hearings for the purpose of future parole consideration." (§ 3000.08(h); see § 3000.1, subd. (a).) In other words, once the court finds that a lifetime parolee has violated parole, revocation is "mandatory." (*Perlas*, *supra*, 47 Cal.App.5th at p. 836.)

> B.    *A Trial Court Must Refer a Parole Revocation Petition Filed by the District Attorney to the Parole Agency for a Written Report in Cases Involving Lifetime Parolees.*

Williams claims that the trial court erred by refusing to refer the petition to the parole agency for a written report before it determined whether he had violated parole. We agree.

8

Whether a trial court must refer a DA-initiated revocation petition to the parole agency for a written report in the case of a lifetime parolee is a question of statutory interpretation that we review de novo. (See *People v. Wilson* (2021) 66 Cal.App.5th 874, 878.) " 'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Ibid.*, quoting *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

As we have said, by its terms section 1203.2(b)(1) requires a written report from the parole agency when the district attorney files a revocation petition. The provision first addresses the ways in which a proceeding to modify, revoke, or terminate parole may be brought: by the trial court on its own motion, or upon a petition by the parole agency, the district attorney, or the parolee. (§ 1203.2(b)(1).) The provision then provides, "The court shall refer its motion or the petition to the . . . parole officer. After the receipt of a written report from the . . . parole officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or terminate the supervision of the supervised person upon the grounds set forth in subdivision (a) if the interests of justice so require." (§ 1203.2(b)(1).)

9

We agree with Williams that the plain language of section 1203.2(b)(1) requires a trial court to refer any revocation petition, no matter who files it, to the parole agency for a written report.  Not only does the statute state without qualification that the court "shall" refer the petition to the parole agency, the court's subsequent actions on the petition occur "after the receipt of [the] written report."  (§ 1203.2(b)(1).)  Nor is there any express exception to the written-report requirement in proceedings involving lifetime parolees.  Section 3000.08(h), which requires remand to prison in the case of lifetime parolees, does not apply until "the court determines that the [lifetime parolee] has committed a violation of law or violated his or her conditions of parole."  Section 1203.2(b)(1) directs a court to obtain a written report *before* it considers the petition, however, so by its terms section 3000.08(h) does not require a different procedure in the case of a lifetime parolee.

The Attorney General argues that, to the contrary, the plain terms of section 1203.2(b)(1) establish that a written report is *not* required in a proceeding involving a lifetime parolee.  He reasons this is so because the provision requires a court to " 'consider' the . . . report when determining whether to 'modify' the parolee's supervision conditions or to 'revoke' his or her parole status," yet in the case of a lifetime parolee the court "has no discretion to choose between these two sanctions or to otherwise impose intermediate sanctions."  (Quoting § 1203.2(b)(1).)

This reading is unpersuasive.  We agree that a trial court has no discretion to do anything but remand a lifetime parolee to prison once it finds that the person violated parole.  But section 1203.2(b)(1) does not state that the court considers the written report only in choosing whether to modify, revoke, or terminate supervision—options that become available once a parole violation is established.  (See *People v. Wilson*, *supra*, 66 Cal.App.5th

10

at p. 885.) Rather, the statute directs that after receiving the report, the court "shall read and consider the report and either its motion or the petition," and the court then "may modify, revoke, or terminate" parole supervision. (§ 1203.2(b)(1).) Were it the case that "consider" meant "consider for the purpose only of deciding whether to modify, revoke, or terminate parole," that limitation would apply equally to the petition itself, which is also to be "read and consider[ed]." (*Ibid.*) Such an interpretation is unworkable, because of course a court considers a revocation petition in deciding whether a violation has even occurred, not just in determining what to do once a violation is established.

The Attorney General also argues that interpreting section 1203.2(b)(1) to require a written report in lifetime parolee cases would "lead to absurd results" by "requiring a trial court to receive an intermediate sanctions assessment that it has no discretion to consider or act upon." Again, we agree that the court has no choice but to remand a lifetime parolee to prison once it finds a parole violation. In the context of this case, this means that by the time the trial court addressed whether a written report was required, it was pointless to obtain one since the parole violation had already been found. But Williams sought a continuance to obtain a report *before* the court decided he violated parole. The question presented is thus whether it is absurd to require a written report earlier in the process. We think it is not.

As do the parties, we focus primarily on the utility of the parole agency's assessment of intermediate sanctions. As indicated above, although this information is not statutorily required to be in the written report when the district attorney files a revocation petition, the case law indicates it normally should be. (*Kurianski*, *supra*, 54 Cal.App.5th at p. 781; *Zamudio*, *supra*, 12 Cal.App.5th at p. 15; see *Castel*, *supra*, 12 Cal.App.5th at p. 1328

11

["undoubtedly a good practice" for written report filed in DA-initiated proceeding to have "same content" as that filed in proceeding initiated by parole agency].)[8]

The Attorney General argues that this case law is "not controlling" because none of the decisions involved lifetime parolees. He argues that in fact, "the rationale in *Castel* and *Zamudio* supports the [trial] court's interpretation here," because those decisions "reasoned that the parole officer's written report serves to guide the trial court's discretion on whether to impose intermediate sanctions on the parolee in lieu of parole revocation." The point is valid as far as it goes. A key purpose of the intermediate sanctions assessment is "to assist the court in exercising its discretion" whether to modify or revoke parole "in the interest of justice." (*Zamudio*, *supra*, 12 Cal.App.5th at p. 15; see *Kurianski*, *supra*, 54 Cal.App.5th at p. 782; *Castel*, *supra*, 12 Cal.App.5th at p. 1329.) This purpose cannot be served in the case of a lifetime parolee, since a trial court has no such discretion upon finding a parole violation.

Similarly, an intermediate sanctions assessment cannot serve the purpose of permitting a trial court to dismiss a DA-initiated petition before adjudicating the alleged parole violation. Williams argues that "the trial court, upon receipt of the parole agency's written report and in advance of

---

[8] *Zamudio* noted that when "the alleged parole violation also constitutes a new felony offense, particularly one involving violence, or when the parolee has absconded from parole, it may well be reasonable for the court to determine intermediate sanctions would be inappropriate without a formal assessment." (*Zamudio*, *supra*, 12 Cal.App.5th at p. 15.) This potential basis for concluding that in a DA-initiated proceeding the written report need not discuss intermediate sanctions does not apply here, as Williams was charged with misdemeanors only. In any case, as explained below, we do not rely solely on the report's effect on the court's decisionmaking about intermediate sanctions to reach our holding.

conducting a revocation hearing, could choose to follow the parole agency's proposed intermediate sanctions and dismiss the revocation petition without making any finding on the allegations in the petition." To support this proposition, he cites *Osorio*, which reversed a trial court order overruling a parolee's demurrer to a revocation petition filed by the parole agency. (*Osorio*, *supra*, 235 Cal.App.4th at pp. 1410, 1412–1413.) Although the "parole violation was conceded," it amounted to "talking to two gang members for 10 minutes." (*Id.* at p. 1415.) The appellate court concluded that the "facts alleged in the [revocation] petition" did not "warrant revocation of parole," and the parole agent had erred by rejecting the PVDMI recommendation for a lesser sanction. (*Ibid.*; see *Perlas*, *supra*, 47 Cal.App.5th at p. 834.)

*Osorio* does not aid Williams. The decision illustrates that a parolee may demur to a petition on the basis that it fails to demonstrate that revocation is appropriate. But it does not suggest that a demurrer would lie in a DA-initiated proceeding where the parole agency disagreed with the district attorney's choice to seek revocation. " ' "[A] demurrer raises an issue of law as to the sufficiency of the accusatory pleading, and it tests only those defects appearing on the face of that pleading." ' " (*Osorio*, *supra*, 235 Cal.App.4th at p. 1412.) Since a district attorney initiates a revocation proceeding only when the parolee has allegedly committed a crime, the parole violation at issue will never be de minimis like the one of concern in *Osorio*. Thus, even if the written report—which in such cases is not part of the petition—recommended intermediate sanctions, that would not render the petition legally insufficient. And Williams does not suggest any other way in which a report could provide a basis for demurring to a petition filed by the district attorney.

13

Nor do we perceive any method other than a demurrer by which a parolee could use the parole agency's report as a basis to seek dismissal of the revocation petition before it is adjudicated. For example, a revocation petition cannot be dismissed in the interest of justice under section 1385. (*People v. Wiley* (2019) 36 Cal.App.5th 1063, 1065, review den. Oct. 9, 2019, S257204.) And we agree with the Attorney General that neither section 1203.2 nor "any other law authorize[s] courts to outright decline to adjudicate a revocation petition because they take issue with the Legislature's judgment regarding the consequences" that flow from finding a parole violation.

But even though the trial court may not dismiss a petition, or impose intermediate sanctions short of revoking parole, based on the parole agency's report, we agree with Williams that the report is not pointless because it could persuade the district attorney to withdraw the petition. "Our public prosecutors are charged with an important and solemn duty to ensure that justice and fairness remain the touchstone of our criminal justice system." (*People v. Hill* (1998) 17 Cal.4th 800, 847.) "[T]he district attorney is expected to exercise his or her discretionary functions in the interests of the People at large," who include " 'the defendant and his family and those who care about him,' " as well as " 'the vast majority of citizens who know nothing about a particular case, but who give over to the prosecutor the authority to seek a just result in their name.' " (*People v. Eubanks* (1996) 14 Cal.4th 580, 589–590, quoting Corrigan, *On Prosecutorial Ethics* (1986) 13 Hastings Const.L.Q. 537, 538–539.) Given this mandate, we can conceive of situations in which a district attorney—even though aware of the consequences of filing a revocation petition against a lifetime parolee and choosing to do so anyway—might reconsider that decision upon learning that the parole agency

14

would have imposed intermediate sanctions in light of the parolee's individual circumstances.[9] While we agree with the Attorney General that such withdrawals are not likely to occur frequently, we do not have such a cynical view of district attorneys to conclude that they will never happen.

Finally, although the parties focus on the requirement for a written report to address intermediate sanctions, the report includes other background information that might inform a trial court's decision whether parole was violated. For example, depending on the alleged violation, details about a parolee's performance on parole (like the results of drug testing) could be relevant if admitted into evidence. Of course, such information could also be introduced through the parole agent's testimony at the revocation hearing, as happened here, but it is not absurd to require the parole agency's written input just because the same information might be presented to the trial court in other ways.[10]

In sum, section 1203.2(b)(1)'s plain language requires a trial court to refer a DA-initiated revocation petition to the parole agency for a written report. There is no statutory exception to this requirement for proceedings involving lifetime parolees, and it is not absurd to require the court to obtain the parole agency's input on intermediate sanctions and other matters before adjudicating the alleged violation. Although we recognize that a written

---

[9] Because we conclude that a written report might influence a district attorney to dismiss a revocation petition, we need not address Williams's suggestion that "[i]t may even be the case that a determination by the parole agency that intermediate sanctions are appropriate could override the district attorney's decision to seek revocation."

[10] There may be other reasons why it not absurd to require a parole agency report in DA-initiated proceedings to revoke a lifetime parolee's parole. For example, at oral argument Williams suggested that having the report in the record could be useful in future proceedings before the Board of Parole Hearings. We need not assess that suggestion here.

report will have limited utility in many such cases, "the Legislature's directive is clear, and we are not at liberty to alter it." (*People v. Wiley*, *supra*, 36 Cal.App.5th at p. 1069.)  The trial court here erred by not obtaining a report from the parole agency before determining whether Williams violated his parole.

III.

DISPOSITION

The appeal is dismissed as moot.

_____

Humes, P.J.

WE CONCUR:

_____

Margulies, J.

_____

Sanchez, J.

*People v. Williams*  A159914

17

Trial Court:

      Sonoma County Superior Court


Trial Judge:

      Hon. Mark A. Urioste


Counsel for Defendant and Appellant:

      Jonathan Soglin, Jeremy Price, under appointment by the Court of Appeal


Counsel for Plaintiff and Respondent:

      Matthew Rodriquez, Acting Attorney General

      Phillip J. Lindsay, Senior Assistant Attorney General

      Sara J. Romano, Supervising Deputy Attorney General

      Michael G. Lagrama, Deputy Attorney General


*People v. Williams*  A159914