Filed 1/10/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B282323 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA106465) |
| v. | |
| RYAN MUNOZ, | |
| Defendant and Appellant. | |

   APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez, Judge. Affirmed.

   Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

   Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Ryan Munoz appeals from the judgment after a jury convicted him of second degree murder. Munoz, while driving under the influence of alcohol, collided with another vehicle on the freeway, killing the passenger and injuring the driver. The prosecution charged him with murder under a theory of implied malice, as permitted under *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*).

On appeal, Munoz raises numerous challenges to the trial court's refusal to instruct the jury on any lesser included offenses to murder. He argues that evidence adduced at the preliminary hearing supplied the necessary elements to deem gross vehicular manslaughter while intoxicated a lesser included offense of murder, even if those elements were absent from the accusatory pleading itself. He argues that the express exclusion of vehicular homicides from the involuntary manslaughter statute violates his constitutional rights to due process and equal protection of the laws. Finally, he argues that the prosecution was fundamentally unfair to structure the accusatory pleading to deny him instructions on lesser included offenses.

In addition to his claims regarding lesser included offenses, Munoz contends that the trial court erred by not allowing him to contact a juror who wrote two letters to the trial court discussing the verdict after the trial ended. Munoz also argues the trial court unduly prejudiced him by admitting a photograph of Munoz smiling during his arrest for the charged crime.

We conclude that binding Supreme Court authority forecloses Munoz's instructional challenges, that the trial court acted within its discretion in denying Munoz access to the juror's contact information, and that Munoz has failed to show that

admission of the photograph resulted in a miscarriage of justice. Accordingly, we affirm the judgment.

## FACTUAL BACKGROUND

We limit our summary of the evidence elicited at trial to those facts relevant to the issues on appeal.

### A. Munoz's prior conviction for driving under the influence of alcohol

In 2012, Munoz was convicted of driving under the influence of alcohol. As part of Munoz's guilty plea, the prosecution provided in writing a *Watson*[1] advisement stating that "it is extremely dangerous to human life to drive while under the influence of alcohol," and that if Munoz "continue[d] to drive while under the influence of alcohol . . . and as a result of [his] driving someone is killed, [he could] be charged with murder."

As a result of the conviction, Munoz attended a first offenders alcohol program. Among other things, the program taught him to avoid driving if he drank. He also attended a victim impact panel class provided by Mothers Against Drunk Driving (MADD), which discussed the dangers of drinking and driving and the *Watson* advisement.

At trial, Munoz acknowledged on cross-examination that he had always known to some extent that driving while intoxicated was dangerous, and he understood this to a greater extent after participating in the alcohol program. He also acknowledged that he was aware from his prior conviction and the MADD class that he could be charged for murder if he killed someone while driving while intoxicated.

---

[1] *Watson*, *supra*, 30 Cal.3d 290.

## B.     The collision

In June 2014, Munoz went on a camping trip with his extended family.  One evening, beginning at about 7:00, he drank at least three 22-ounce craft beers and some fireball whiskey.  He was planning to sleep at the campsite that night and not drive.

Later that evening, Munoz's stepsister's husband insulted Munoz's mother when she encouraged him to go to bed.  Munoz and his stepsister's husband began arguing, shouting angrily at one another.  Munoz put his dog in his truck and drove away.

Witnesses saw Munoz driving down the freeway at a high rate of speed, zigzagging as he changed lanes.  Other cars changed lanes to move out of his way.

Michael Mahan was driving his truck further down the freeway at approximately 65 miles per hour.  Gevork Krpikyan was in the passenger seat.  Mahan looked in his rearview mirror and saw Munoz's truck approaching.  He yelled to Krpikyan to " 'hold on' " and attempted to speed up.  Munoz's truck collided with the rear of Mahan's truck.  Mahan's truck hit the embankment and rolled over at least three times.  Krpikyan was ejected from the truck onto the freeway, and another vehicle ran over him.  Krpikyan died from multiple traumatic injuries.  Mahan suffered injuries to his head and back, and it took him "a couple months" to be able to walk again.

Evidence from Munoz's truck's event data recording system indicated Munoz was traveling at 98 miles per hour five seconds before the collision and 93 miles per hour one second before the collision.  Munoz had not applied the brakes immediately before the crash.

## C.     Postcollision events

Minutes after the collision a witness saw Munoz and his dog sitting outside of Munoz's truck a few hundred feet away from the collision site.  Munoz's windshield was completely shattered.  Munoz asked the witness, " 'What happened to the shit I hit?' "  Munoz "was frazzled and slurring his speech" and the witness believed he was drunk.  Munoz put his dog into the truck and drove off towards the nearest freeway exit.

California Highway Patrol (CHP) officers detained Munoz on a side street shortly thereafter.  An officer testified that Munoz's breath smelled of alcohol, his eyes were "glossy," and he was "swaying" and "unsteady on his feet."  Munoz failed a battery of field sobriety tests.  Two preliminary alcohol screening tests taken minutes apart measured Munoz's blood alcohol level at .201 percent and .202 percent.  A chemical test performed at a sheriff's station approximately half an hour later measured Munoz's blood alcohol level at .19 percent.

CHP impounded and searched Munoz's truck, finding a portable breathalyzer in the center console.

## D.     Defense expert testimony

An expert witness for the defense testified regarding "fight or flight syndrome," explaining that when humans experience high stress, fear, or anger, their brains' ability "to process information and to make decisions . . . is greatly compromised." The witness testified that threats could trigger this response.  He also explained that sleep deprivation affects cognitive processes, memory, and judgment.

5

## PROCEDURE

An information charged Munoz with murder (Pen. Code, § 187, subd. (a))[2] and leaving the scene of an accident (Veh. Code, § 20001, subd. (a)). The trial court dismissed the Vehicle Code count pursuant to section 1385.

Munoz requested jury instructions on involuntary manslaughter and gross vehicular manslaughter while intoxicated. The trial court denied both requests.

The jury found Munoz guilty of second degree murder. The trial court sentenced him to 15 years to life, awarded credits, and imposed fines and fees.

Munoz timely appealed.

## DISCUSSION

### A. Munoz Was Not Entitled To An Instruction On Gross Vehicular Manslaughter While Intoxicated As A Lesser Included Offense Of Murder

Munoz argues that because he was charged with murder on the theory that he committed a homicide while driving under the influence of alcohol, he was entitled to an instruction on gross vehicular manslaughter while intoxicated as a lesser included offense. We disagree.

#### 1. Applicable law

##### a. Murder and manslaughter

"Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) "[M]alice may be

---

[2] Undesignated statutory references are to the Penal Code.

6

express or implied." (§ 188.) Implied malice does not require an intent to kill. (*People v. Swain* (1996) 12 Cal.4th 593, 602.) Instead, it is demonstrated by " 'both a physical and a mental component. The physical component is satisfied by the performance of "an act, the natural consequences of which are dangerous to life." [Citation.] The mental component is the requirement that the defendant "knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life." [Citation.]' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.)

Under certain circumstances, malice may be implied when a defendant kills someone while willfully driving under the influence of alcohol, thus subjecting the defendant to a charge of murder. (See *People v. Wolfe* (2018) 20 Cal.App.5th 673, 681 (*Wolfe*)). This is "colloquially known as a *Watson* murder" after *Watson*, *supra*, 30 Cal.3d 290. (*Wolfe*, *supra*, 20 Cal.App.5th at p. 677.) Among other things, conviction on this basis requires a showing that the defendant had a subjective, actual awareness of the risk presented by his or her conduct. (*Watson*, at pp. 296-297.) Opinions affirming convictions under this principle have relied on a number of factors present in *Watson*, including " '(1) blood-alcohol level above the .08 percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving.' " (*Wolfe*, at pp. 682-683.) "However, 'nowhere does the opinion in *Watson* state that all of the factors present in that case are necessary to a finding of second degree murder.' " (*Wolfe*, at p. 683.)

Involuntary manslaughter "is the unlawful killing of a human being without malice," occurring "in the commission of an

7

unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." (§ 192, subd. (b).) Involuntary manslaughter "is punishable by imprisonment . . . for two, three, or four years." (§ 193, subd. (b).)

The Penal Code states expressly that involuntary manslaughter does "not apply to acts committed in the driving of a vehicle." (§ 192, subd. (b).) Instead, section 192, subdivision (c) defines "vehicular" manslaughter, which generally mirrors the language of the involuntary manslaughter provision but adds the element of "driving a vehicle" and imposes different penalties depending on the level of negligence involved. A defendant convicted of vehicular manslaughter with gross negligence may be imprisoned in county jail for not more than one year, or in state prison for two, four, or six years. (§ 193, subd. (c)(1).) A defendant convicted of vehicular manslaughter without gross negligence may be imprisoned in county jail for not more than one year. (*Id.*, subd. (c)(2).)[3]

The Penal Code also defines vehicular manslaughter while intoxicated. (§ 191.5.) This offense requires that, in addition to satisfying the elements of vehicular manslaughter, the defendant be driving in violation of sections 23140, 23152, or 23153 of the Vehicle Code, which pertain to driving under the influence of alcohol or drugs. (§ 191.5, subds. (a), (b).) A defendant who violates this statutory provision with gross negligence may be

_____

[3] A third category of vehicular manslaughter applies when the vehicular accident "was knowingly caused for financial gain," such as to give rise to a "false or fraudulent claim." (§§ 192, subd. (c)(3), 550, subd. (a)(3).) This category is not at issue in this appeal.

imprisoned for four, six, or ten years, and without gross negligence for 16 months or two or four years. (*Id.*, subd. (c)(1), (2).) Section 191.5 expressly does not prohibit or preclude a charge of murder on a theory of implied malice. (*Id.*, subd. (e).)

### b. Lesser included offenses

"Generally, when a defendant is charged with a crime, the trial court must instruct the jury on any lesser included offenses that are supported by the evidence." (*Wolfe, supra,* 20 Cal.App.5th at p. 684, citing *People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).) Courts have "applied two tests in determining whether an uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228 (*Reed*).)

Involuntary manslaughter is a lesser included offense of murder; thus, a trial court must instruct the jury on involuntary manslaughter "[i]f the evidence presents a material issue of whether a killing was committed without malice, and if there is substantial evidence defendant committed involuntary manslaughter." (*People v. Cook* (2006) 39 Cal.4th 566, 596.)

If a defendant is charged with murder caused by driving a vehicle while intoxicated, however, a trial court cannot give an involuntary manslaughter instruction, because the alleged killing was an "act[ ] committed in the driving of a vehicle" exempt from

9

the involuntary manslaughter statute. (§ 192, subd. (b); see *Wolfe*, *supra*, 20 Cal.App.5th at pp. 685-686.) Thus, section 192, subdivision (b) effectively eliminates involuntary manslaughter as a lesser included offense of murder when "committed in the driving of a vehicle." (§ 192, subd. (b).)

Our Supreme Court has held that gross vehicular manslaughter while intoxicated also is not a lesser included offense of murder under the statutory elements test. (*People v. Sanchez* (2001) 24 Cal.4th 983 (*Sanchez*).) In *Sanchez*, the defendant killed someone in a motor vehicle accident while intoxicated, and a jury convicted him of both murder and gross vehicular manslaughter while intoxicated. (*Id.* at pp. 985-986.) On appeal, the court addressed whether the manslaughter charge was a lesser included offense of murder, in which case the defendant could not be convicted of both. (See *id.* at p. 987 ["A defendant . . . cannot be convicted of both an offense and a lesser offense necessarily included within that offense, based upon his or her commission of the identical act"].) The court upheld the dual convictions. (*Id.* at p. 988.) It reasoned that "the statutory elements of murder do not include all the elements" of gross vehicular manslaughter while intoxicated, because the latter "requires proof that the homicide was committed 'in the driving of a vehicle' and that the driving was in violation of specified Vehicle Code provisions prohibiting driving while intoxicated." (*Id.* at p. 989.) Thus, "[a]lthough as a factual matter, a murder may be carried out by means of a vehicle and by an intoxicated driver, in the abstract it obviously is possible to commit a murder without committing gross vehicular manslaughter while intoxicated." (*Id.* at p. 988.)

10

While *Sanchez* addressed the question of lesser included offenses in the context of dual convictions, the test it applied is identical to that applied in cases involving instructions on lesser included offenses. (See, e.g., *People v. Birks* (1998) 19 Cal.4th 108, 117-118 (*Birks*)). Thus, its reasoning compels the conclusion that a trial court is not required to instruct on gross vehicular manslaughter while intoxicated as a lesser included offense to murder. (See *Wolfe*, *supra*, 20 Cal.App.5th at p. 686.)

## 2. Analysis

Munoz argues that *Sanchez* only applied the statutory elements test, not the accusatory pleading test, and that under this latter test the trial court should have deemed gross vehicular manslaughter while intoxicated a lesser included offense of murder and instructed the jury accordingly. Munoz's characterization of the holding of *Sanchez* is correct; the Supreme Court mentioned both the elements test and the accusatory pleading test but conducted its analysis solely by comparing "the statutory elements of the crimes involved," with no reference to the accusatory pleading. (*Sanchez*, *supra*, 24 Cal.4th at p. 988; see also *Reed*, *supra*, 38 Cal.4th at p. 1228 [accusatory pleading test unnecessary to holding of *Sanchez*].)

The accusatory pleading in this case is of no aid to Munoz. The pleading stated, in relevant part, "On or about June 28, 2014, in the County of Los Angeles, the crime of MURDER, in violation of PENAL CODE SECTION 187(a), a Felony, was committed by RYAN MUNOZ, who did unlawfully, and with malice aforethought murder GEVORK KRPIKYAN, a human being." Munoz does not dispute that this does little more than repeat the statutory definition of murder from the Penal Code, and does not supply the additional elements that would

11

encompass gross vehicular manslaughter while intoxicated, namely the use of a vehicle and intoxication. (Cf. *People v. Marshall* (1957) 48 Cal.2d 394, 405-406 [allegation in information that defendant took automobile during robbery established unlawful driving or taking of vehicle as lesser included offense].)

Munoz argues that "[a]lthough the prosecution declined to include the allegation of drunk driving in the Information," the prosecution in effect charged him with driving under the influence of alcohol "as the predicate act for implied malice murder" under *Watson*. He cites to the transcript of the preliminary hearing, in which the trial court found probable cause to charge Munoz with implied malice murder based on the fact that Munoz had driven while intoxicated despite having been convicted of doing so earlier and attending classes that taught him the dangers of such conduct. Munoz notes also that the trial court, when instructing the jury on the elements of murder, stated that "[t]he act or acts the prosecution is relying on to prove implied malice aforethought for murder is the driving a motor vehicle while under the influence of alcohol in violation of [Vehicle Code section 23152, subdivisions (a) and (b)]," and provided instructions for those two Vehicle Code offenses as well.

We do not disagree that, based on the preliminary hearing and jury instructions, the prosecution could not secure a murder conviction under the circumstances of this case without proving beyond a reasonable doubt that Munoz drove while intoxicated. The Supreme Court has indicated repeatedly, however, that when applying the accusatory pleading test to determine whether one offense is necessarily included in another, courts do not look to evidence beyond the actual pleading and its allegations regarding the purported greater offense. (See, e.g.,

12

*People v. Banks* (2014) 59 Cal.4th 1113, 1160 (*Banks*) ["When applying the accusatory pleading test, '[t]he trial court need only examine the accusatory pleading' "], overruled in part by *People v. Scott* (2015) 61 Cal.4th 363, 391; accord, *People v. Smith* (2013) 57 Cal.4th 232, 244; see also *People v. Montoya* (2004) 33 Cal.4th 1031, 1036 (*Montoya*) ["Consistent with the primary function of the accusatory pleading test—to determine whether a defendant is entitled to instruction on a lesser uncharged offense—we consider *only* the pleading for the greater offense"].)[4]

Indeed, in cases such as this one in which "the accusatory pleading incorporates the statutory definition of the charged offense without referring to the particular facts, a reviewing court *must rely on the statutory elements* to determine if there is a lesser included offense." (*People v. Robinson* (2016) 63 Cal.4th 200, 207, emphasis added; see also *People v. Shockley* (2013) 58 Cal.4th 400, 404 ["because the information . . . simply tracked [the statutory] language without providing additional factual allegations, we focus on the elements test"].)

The Supreme Court has explained the importance of limiting analysis of lesser included offenses to the statutory elements and language of the accusatory pleading to "promote[ ] consistency in application" and "ease[ ] the burden on both the trial courts and the reviewing courts." (*People v. Ortega* (*Ernesto*) (1998) 19 Cal.4th 686, 698 (*Ortega* (*Ernesto*)).) In *Ortega*

---

**4** In *Montoya*, the Supreme Court held that under the accusatory pleading test, the unlawful taking of a vehicle was not a lesser included offense of carjacking where the accusatory pleading did not allege that the vehicle was taken without the owner's consent. (*Montoya, supra,* 33 Cal.4th at p. 1036.)

(*Ernesto*), the court rejected the analysis of lesser included offenses in *People v. Rush* (1993) 16 Cal.App.4th 20 (*Rush*). It reasoned that the Court of Appeal in *Rush* erred by considering both "the language of the information and the evidence introduced at the preliminary hearing" in making its determination.[5] (*Ortega* (*Ernesto*), at pp. 697-698.) "Basing this determination upon the evidence would require trial courts to consider whether the particular manner in which the charged offense allegedly was committed created a sua sponte duty to instruct that the defendant also may have committed some other offense. In order to determine whether the trial court proceeded correctly, a reviewing court, in turn, would be required to scour the record to determine which additional offenses are established by the evidence underlying the charged offenses, rather than to look simply to the elements of the offenses and the language of the accusatory pleading." (*Id.* at p. 698.) The Supreme Court later expressly disapproved *Rush* to the extent it conflicted with the rule that courts "consider *only* the pleading for the greater offense" when applying the accusatory pleading test. (*Montoya*, *supra*, 33 Cal.4th at p. 1036 & fn. 4.)

Munoz claims we properly may consider evidence from the preliminary hearing under an "expanded" accusatory pleading test as articulated in *People v. Ortega* (*Andrew*) (2015) 240 Cal.App.4th 956, 967 (*Ortega* (*Andrew*)), a case decided by the Sixth District Court of Appeal. In *Ortega (Andrew)*, the accusatory pleading charged the defendant with

---

[5] Despite the "flawed reasoning" of *Rush*, the Supreme Court agreed with its ultimate holding that grand theft is a lesser included offense of robbery. (*Ortega* (*Ernesto*), *supra*, 19 Cal.4th at pp. 697-698.)

14

sexual penetration by force, "[r]eferencing only the statutory elements of the offense." (*Id.* at p. 960.) On appeal, the defendant argued that he was entitled to an instruction on sexual battery as a lesser included offense. (*Id.* at p. 965.) The Court of Appeal held that sexual battery was not a lesser included offense under the statutory elements test, because sexual battery required the offender to touch the victim with a part of his or her body, whereas sexual penetration by force was broader and encompassed, for example, use of a "foreign object." (*Id.* at p. 967.) Thus, it was possible to commit the greater offense without necessarily committing the lesser. (*Ibid.*)

The court concluded, however, that sexual battery was a lesser included offense under an "expanded accusatory pleading test" that looked not just to the pleading itself, but to the "evidence adduced at the preliminary hearing" as well, which established the defendant had penetrated the victim with his fingers. (*Ortega* (*Andrew*), *supra*, 240 Cal.App.4th at p. 967.) The court reasoned that under the current pleading standard, the accusatory pleading need state nothing more than the statutory language; because this was insufficient to apprise the defendant fully of the details of the charges against him, however, due process required that the defendant also receive the transcript from the preliminary hearing. (*Id.* at p. 969.) Thus, "[t]he transcript is integral to the accusatory procedure because, consistent with a defendant's due process right to notice, a defendant cannot be prosecuted for an offense not shown at the preliminary hearing to have been committed." (*Ibid.*) Given that "the prosecutor was bound by the preliminary hearing testimony to prove that defendant digitally penetrated [the victim's] vagina," "felony sexual battery was necessarily a lesser included

15

offense of forcible sexual penetration, and it would be unjust to allow the prosecutor, by controlling the language in the charging document, to also control whether the jury considers that lesser offense." (*Id.* at p. 970.)

We respectfully decline to follow *Ortega* (*Andrew*), which did not discuss *Ortega* (*Ernesto*) or *Montoya* and their disapproval of the analysis in *Rush*, a case in which the Court of Appeal considered the preliminary hearing evidence just as *Ortega* (*Andrew*) advocated. *Ortega* (*Andrew*) also did not discuss the many Supreme Court cases cited above, stating that the accusatory pleading test looks solely to the language of the pleading itself. (See, e.g., *Banks*, *supra*, 59 Cal.4th at p. 1160.) Nor did *Ortega* (*Andrew*) account for the practical concerns raised in *Ortega* (*Ernesto*) that an expanded accusatory pleading test would lead to inconsistent application and additional burden on the courts. (See *Ortega* (*Ernesto*), *supra*, 19 Cal.4th at p. 698.) The only reported case citing *Ortega* (*Andrew*) declined to adopt the expanded accusatory pleading test, concluding, as do we, that it was contrary to *Montoya* and other Supreme Court authority. (See *People v. Macias* (2018) 26 Cal.App.5th 957, 964.)

Munoz argues, in line with *Ortega* (*Andrew*), that if the preliminary hearing transcript is not considered part of the accusatory pleading, then he did not receive adequate notice of the charges against him, in violation of his due process rights. He also argues that because an information properly can include nothing more than the statutory language of the charged offenses, the accusatory pleading test "is eliminated as a separate test" unless courts consider the additional allegations from the preliminary hearing. Whatever the merit of these arguments, on which we express no opinion, we are bound by Supreme Court

16

authority (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), which makes clear that we are not to look beyond the language of the accusatory pleading itself in assessing lesser included offenses.

Munoz argues we are not bound by the holding of *Montoya* because it applied the accusatory pleading test to determine the propriety of multiple convictions (*Montoya, supra,* 33 Cal.4th at pp. 1035-1036), an application later rejected in *Reed, supra,* 38 Cal.4th at p. 1229.[6] *Montoya* states, however, that its rule that courts should consider only the accusatory pleading for the greater offense is "[c]onsistent with the primary function of the accusatory pleading test—to determine whether a defendant is entitled to instruction on a lesser uncharged offense." (*Montoya,* at p. 1036.) Thus, *Montoya* intended its rule not only to apply in the context of multiple convictions, but also in the context of determining whether instructions on a lesser offense were warranted. Here, we invoke it for the latter purpose.

## B. Due Process Did Not Require The Trial Court To Instruct On Involuntary Manslaughter

Munoz argues that the statutory scheme eliminating involuntary manslaughter as a lesser included offense of an implied malice murder when committed by an intoxicated driver violates his right to due process under the

---

**6** *Montoya* questioned whether the accusatory pleading test was appropriate in the context of determining whether a defendant could be convicted of two crimes, but declined to resolve the question because in that case the accusatory pleading test did not aid the defendant. (*Montoya, supra,* 33 Cal.4th at pp. 1035-1036.)

17

Fourteenth Amendment to the United States Constitution. We disagree.

### 1. Munoz did not have a fundamental right to an involuntary manslaughter instruction

" ' "Unless application of a statute impinges upon 'fundamental rights,' " ' " it survives a substantive due process challenge so long as " ' "the application is procedurally fair and reasonably related to a proper legislative goal." ' " (*Barnes v. Superior Court* (2002) 96 Cal.App.4th 631, 641, fn. 7 (*Barnes*).) A right is "fundamental" if it is " ' "deeply rooted in this Nation's history and tradition," . . . and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if [it was] sacrificed." ' " (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 142 (*Jimenez*).)

Munoz contends that "the right to an instruction on a lesser include[d] offense is fundamental, for due process purposes, because it impacts a criminal defendant's right to have [a] jury determine all material issues in the case." Munoz claims that by eliminating involuntary manslaughter as a lesser included offense of murder committed in the driving of a vehicle, the law did not allow the jury to consider the full range of options for conviction, thus leaving the jury with "an all-or-nothing choice" between murder and acquittal. He claims that "the law encouraged the jury to find [him] guilty of murder so that he would not get away totally free."

Munoz quotes *People v. Barton* (1995) 12 Cal.4th 186 (*Barton*), in which our Supreme Court addressed the trial court's obligation to instruct on lesser included offenses. The court explained that, because "[t]ruth may lie" somewhere between the defendant's claim of innocence and the prosecution's assertion of

18

guilt of the charged crime, "[a] trial court's failure to inform the jury of its option to find the defendant guilty of the lesser offense would impair the jury's truth-ascertainment function. Consequently, neither the prosecution nor the defense should be allowed, based on their trial strategy, to preclude the jury from considering guilt of a lesser offense included in the crime charged. To permit this would force the jury to make an 'all or nothing' choice between conviction of the crime charged or complete acquittal, thereby denying the jury the opportunity to decide whether the defendant is guilty of a lesser included offense established by the evidence." (*Id.* at p. 196.)

We disagree that the principles articulated in *Barton* constitute fundamental rights for purposes of due process analysis. It is true a defendant has the right to instructions on lesser included offenses under California law, and that the right has been tied to the state constitutional right " 'to have the jury determine every material issue presented by the evidence.' " (*Breverman, supra,* 19 Cal.4th at p. 153.) *Breverman* held, however, that the right to instructions on lesser included offenses "arises from California law alone" (*id.* at p. 149), and noted "the United States Supreme Court has expressly refrained from recognizing a federal constitutional right to instructions on lesser included offenses in noncapital cases" (*id.* at p. 165).

On this basis, the Fourth District Court of Appeal recently held that an intoxicated driver charged with murder had "no fundamental constitutional right to have the jury instructed as to a manslaughter charge" even if it were a lesser included offense. (*Wolfe, supra,* 20 Cal.App.5th at p. 688.) We similarly decline to consider the right to instructions on lesser included offenses " ' "implicit in the concept of ordered liberty" ' " (*Jimenez, supra,*

19

130 Cal.App.4th at p. 142) when neither the United States nor California Supreme Court has interpreted the federal Constitution to require it. Thus, to the extent Munoz would have been entitled to an instruction on involuntary manslaughter but for the exclusion for vehicle-related homicides under section 192, subdivision (b), the Legislature did not infringe upon a fundamental right by enacting that statutory provision.

### 2. The vehicular manslaughter statutes are reasonably related to a proper legislative goal

Because the law at issue here does not implicate a fundamental right, we consider whether " ' "the application is procedurally fair and reasonably related to a proper legislative goal." ' " (*Barnes, supra,* 96 Cal.App.4th at p. 641, fn. 7.) Under this analysis, "[t]he enactment should not be unreasonable, arbitrary, or capricious. [Citation.] The wisdom of the legislation, however, is not at issue, and neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate a statute." (*People v. Superior Court (Johnson)* (2004) 120 Cal.App.4th 950, 958 (*Johnson*).)

Here, the Legislature reasonably could distinguish unintentional homicides committed in the driving of a vehicle from other unintentional homicides. Motor vehicles are a "leading cause of accidental deaths" in this country. (*Motor Vehicle Mfrs. Ass'n v. State Farm Mut.* (1983) 463 U.S. 29, 33.) Our Supreme Court expressly has identified deterrence of driving under the influence of alcohol as "a highly important governmental interest." (*Ingersoll v. Palmer* (1987) 43 Cal.3d 1321, 1338.)

20

Given the prevalence of deaths caused by motor vehicle accidents, the Legislature reasonably could conclude that the general involuntary manslaughter statute did not account sufficiently for the varying circumstances and levels of culpability (e.g. gross negligence, intoxication) arising in this all-too-common occurrence. The Legislature thus reasonably could define separate vehicular manslaughter offenses, with a wider range of penalties than would be available under the general involuntary manslaughter statute. (Compare §§ 191.5, subds. (c)(1), (2), 193, subds. (b), (c)(1), (2).) The Legislature reasonably could add additional elements to the vehicular manslaughter statutes, such as "driving a vehicle," to distinguish them from involuntary manslaughter. Having created a specific statutory scheme directed at unintentional vehicular homicides, the Legislature also reasonably could exclude vehicular homicides from the general involuntary manslaughter statute.

Munoz argues the exclusion of vehicular homicides from the involuntary manslaughter statutory provision is arbitrary and capricious. He states that he "recognizes that an automobile can wreak serious havoc and that car accidents are a major cause of death in this [country], but that should not justify denying a criminal defendant the opportunity to be convicted of a lesser included offense, particularly when the lesser crime is more commensurate with his guilt." He points out that the Legislature has not precluded instructions on *voluntary* manslaughter for vehicular homicides, and argues it is illogical to permit voluntary manslaughter as a lesser included offense but not involuntary manslaughter.

Munoz's arguments suggest that the Legislature's intention in creating the separate vehicular manslaughter statutes was to

21

exclude manslaughter as a lesser included offense of a *Watson* murder. Even assuming this was the Legislature's intent, we are doubtful the statutory scheme would be unconstitutional, given that a defendant has no fundamental right to instructions on lesser offenses.

We, however, need not decide that question. As we have explained, there is another valid rationale for creating the separate vehicular manslaughter statutes, namely to create a wider range of penalties for an all-too-common form of homicide. The fact that, as a consequence of this statutory scheme, courts no longer must instruct on either involuntary or vehicular manslaughter as a lesser included offense of a *Watson* murder does not render the scheme invalid. In the absence of infringement on a fundamental right, the Legislature may address a problem as it sees fit despite the "availability of less drastic remedial alternatives." (*Johnson*, *supra*, 120 Cal.App.4th at p. 958.)

### C. The Trial Court Did Not Violate Munoz's Right To Equal Protection Under The Laws By Refusing To Instruct On Involuntary Manslaughter

Munoz argues that excluding vehicular homicides from the involuntary manslaughter statute violates his right to equal protection under the laws. He asserts there is "no adequate justification" to treat him differently from others who commit implied malice murder with some instrumentality other than a vehicle, and therefore have involuntary manslaughter available as a lesser included offense if supported by the evidence. The analysis of this challenge is not materially different from the analysis of Munoz's due process challenge, and we similarly hold Munoz has failed to show a constitutional violation.

22

"Equal protection of the laws means that similarly situated persons shall be treated similarly unless there is a sufficiently good reason to treat them differently." (*People v. Castel* (2017) 12 Cal.App.5th 1321, 1326.) In evaluating an equal protection challenge, we first determine "whether there are two groups of individuals who are ' " 'similarly situated with respect to the legitimate purpose of the law' " ' but are being treated differently." (*Ibid.*) "[I]f these threshold requirements are met, a court must next ascertain whether the Legislature has a constitutionally sufficient reason to treat the groups differently." (*Ibid.*) As a general matter, laws "will be upheld as long as there is any ' " 'rational relationship between the disparity of treatment and some legitimate governmental purpose,' " ' even if the rational basis for that law was never articulated by—or even relied on by—the Legislature." (*Id.* at p. 1327.) However, if the law "affects a fundamental right," or the groups the law treats differently are "members of a 'suspect class' (such as race, national origin, gender, or illegitimacy, to name a few)," courts will subject it to heightened scrutiny. (*Id.* at pp. 1326-1327.)

We will assume for the sake of argument that defendants charged with *Watson* murder are similarly situated to defendants charged with other forms of implied malice murder, and that the law treats them differently. Munoz's equal protection challenge nonetheless fails for the same reasons his due process challenge fails. As we have explained, exclusion of manslaughter as a lesser included offense of *Watson* murder does not implicate a fundamental right, and Munoz does not claim to be a member of a suspect class. As we have also explained, the vehicular manslaughter statutes are reasonably related to the legitimate legislative purpose of providing a wider and more nuanced range

23

of penalties given the ubiquity of automobiles and the resulting deaths caused by motorists. In short, the vehicular manslaughter statutes, and the corresponding exclusion of vehicular homicides from the involuntary manslaughter statute, do not violate Munoz's right to equal protection of the laws.

**D. The Prosecution Was Within Its Discretion To Charge Munoz With Murder Only And Refuse To Consent To An Instruction On Gross Vehicular Manslaughter While Intoxicated**

Munoz argues that it was fundamentally unfair for the prosecution to charge him with a *Watson* murder, then deny him a manslaughter instruction as a lesser included offense by omitting allegations of drinking and driving from the information. Munoz also objects that the prosecution refused to consent to an instruction on manslaughter as a lesser *related* offense. Munoz characterizes this as "manipulation of the charging procedures." We disagree.

A prosecutor has broad discretion when selecting which offenses to charge, and "[t]he courts do not generally supervise these 'purely prosecutorial function[s].' " (*People v. Ceja* (2010) 49 Cal.4th 1, 7, second alteration in original.) Even when two different statutes prescribe different punishments for the same conduct, a prosecutor may, without violating constitutional principles, choose to charge under one and not the other absent a "showing that a defendant 'has been singled out deliberately for prosecution on the basis of some invidious criterion.' " (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838-839 [prosecutor's decision to charge the defendant with battery on a custodial officer without injury instead of battery on a custodial officer with injury where the former charge arguably carried stiffer

24

punishment did not violate equal protection].) Having held that the charging scheme for *Watson* murder and vehicular manslaughter complies with constitutional due process and equal protection requirements, it would be anomalous for us to conclude that the prosecution ran afoul of those requirements by exercising its discretion within that approved scheme.

It is also well established that, absent the prosecution's consent, a defendant cannot compel the trial court to instruct on an uncharged lesser offense not necessarily included in a charged offense, even if the lesser offense "bear[s] some conceptual and evidentiary 'relationship' " to the greater offense. (*Birks*, *supra*, 19 Cal.4th at p. 112; *People v. Rangel* (2016) 62 Cal.4th 1192, 1230 [" '[I]nstruction on a lesser related offense is proper only upon the mutual assent of the parties.' "].) Among its reasons for this rule, *Birks* stated that "[o]nce the relative precision of necessary inclusion is left behind, the parties and the courts are cast adrift in a trackless sea," with "no clear standards for determining" when a court must instruct on a lesser related offense. (*Birks*, at p. 131.) The court cautioned that "[t]his leaves an accused potentially infinite latitude to argue a sufficient link" justifying an instruction. (*Ibid.*)

Munoz's argument asks us to cast ourselves into *Birks*'s "trackless sea" to determine if, based on the evidence in a given case, the prosecution in fairness should have charged additional crimes or consented to additional instructions. This is no different than requiring trial courts to review the record and instruct on uncharged but not necessarily included offenses supported by the evidence, something clearly not permitted under *Birks*. While in a particular case it might be relatively straightforward to determine what other offenses the evidence

25

supports—in the instant case, for example, there is no doubt the prosecution intended to prove that Munoz committed murder as a result of drinking and driving—the *Birks* rule necessarily rejects a case-by-case analysis.

Munoz concedes that no case has "definitively decided" that the prosecution "violates due process of law when it deliberately omits allegations in the pleading instrument to preclude instructions on lesser included offenses or to permit multiple convictions," but argues that some cases have so suggested. He cites *Montoya*, in which the Supreme Court held that the accusatory pleading in that case did not "include the requisite allegations" for the lesser offense of unlawful taking of a vehicle to be necessarily included in the greater offense of carjacking. (*Montoya*, *supra*, 33 Cal.4th at p. 1036.) Following this conclusion, the court stated in a footnote that "[n]othing before us suggests that the prosecutor deliberately omitted information from the allegations for carjacking so as to avoid including the facts necessary for the unlawful taking of a vehicle and to thereby subject defendant to conviction for both offenses." (*Id.* at p. 1036, fn. 5.)

This footnote says nothing more than there was no evidence of deliberate omission before the court, and therefore the court was, at most, leaving that issue for another day. It does not compel the conclusion that a prosecutor's deliberate omission of allegations is improper.

Munoz also cites *Ortega* (*Andrew*), which, among the reasons in support of its expanded accusatory pleading test, stated that "it would be unjust to allow the prosecutor, by controlling the language in the charging document, to also control whether the jury considers [a] lesser offense" established by

26

evidence at the preliminary hearing.  (*Ortega* (*Andrew*), *supra*, 240 Cal.App.4th at p. 970.)  As we have discussed, we respectfully submit that the reasoning and holding of *Ortega* (*Andrew*) are contrary to established Supreme Court authority, and we decline to follow it.

## E.  The Trial Court Did Not Abuse Its Discretion By Denying Munoz Juror Contact Information After The Trial

Munoz argues that a letter sent by a juror to the trial court after trial showed evidence of undue influence on the verdict, and that the trial court abused its discretion by not providing the juror's contact information to Munoz's counsel for further investigation.  We disagree.

### 1.  Additional factual background

The trial court received two letters from a juror (Juror Two) after trial ended.  The first was dated October 21, 2016, approximately three weeks after the jury entered its verdict.  The letter expressed Juror Two's desire "to discuss the reasoning that led to my verdict."  (Underlining omitted.)  Juror Two wrote, "I went into the courtroom wanting to find [Munoz] not guilty.  During the whole trial, I was looking for a 'loophole' that would allow such a verdict!"  The letter asked the trial court for "an opinion on the reasoning that led to my decision."  The letter went on to detail Juror Two's thoughts about the verdict and the reasoning underlying it, and concluded by inviting the trial judge to meet for coffee.  The second letter, dated November 22, 2016, asked for further explanation about one of the jury instructions pertaining to when a criminal act begins.

27

The trial court provided copies of the letters to the parties with Juror Two's identifying information redacted. Munoz filed a petition requesting Juror Two's address and telephone number, arguing the letters contained evidence of juror misconduct relevant to Munoz's motion for a new trial. The trial court denied the petition, finding that "the letters essentially are a narrative of the challenges that occur in virtually every deliberation process" and that Juror Two's "remarks do not constitute recognized juror misconduct."

## 2. Applicable law

Following the recording of a jury's verdict in a criminal trial, the trial court must seal the record of "personal juror identifying information," including "names, addresses, and telephone numbers." (Code Civ. Proc., § 237, subd. (a)(2).) "Any person may petition the court for access to these records" upon a "prima facie showing of good cause for the release of the" juror information. (*Id.*, subd. (b).) This showing must " 'support a reasonable belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through other means, and that further investigation is necessary to provide the court with adequate information to rule on a motion for new trial.' " (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 990 (*Carrasco*).) "Good cause does not exist where the allegations of jury misconduct are speculative, conclusory, vague, or unsupported." (*People v. Cook* (2015) 236 Cal.App.4th 341, 346 (*Cook*).) " 'Absent a satisfactory, preliminary showing of possible juror misconduct, the strong public interests in the integrity of our jury system and a juror's right to privacy outweigh the countervailing public interest served by disclosure of the juror information.' " (*Carrasco*, at p. 990.) We review a trial court's denial of a

28

petition for the release of juror information for abuse of discretion.  (*Id*. at p. 991.)

### 3.    Analysis

Munoz identifies two sections of the first letter which he claims show evidence of juror misconduct.  The first section stated that "[f]rom the very beginning, I knew [Munoz] was not 'an innocent!'  His prior history speaks for [itself].  He has broken more laws than I know of and deserves to be held accountable and punished.  But still, I didn't want to find him guilty!  I looked for any loophole that I could use to deliver a different verdict."  (Italics, boldface, and underlining omitted.)

Munoz argues this section of the letter establishes misconduct in three ways.  First, he claims the juror "prejudged the case and applied the reasonable doubt [standard] in reverse order" by presuming Munoz to be guilty from the outset.  Second, he claims Juror Two improperly considered Munoz's "past crimes to support the guilty verdict."  Third, he argues Juror Two "relied on false information" because Munoz's purported past crimes were in fact misdemeanor Vehicle Code violations.

Other sections of the letter, however, contradict Munoz's interpretation.  Towards the end of the letter Juror Two wrote, "I found [Munoz] guilty, not because he was driving intoxicated, but because he made a conscious decision to break the law; he was on parole and he knew he had the prior DUI!  He should be held accountable, for his decisions, when he had the mental facilities to act lawfully.  He willfully chose not [to]."  (Underlining omitted.)  This clarifies that, to the extent Juror Two took into account Munoz's past acts, it was in the context of Munoz's knowledge of the perils and illegality of driving while intoxicated, a proper factor in assessing implied malice under *Watson*.

29

(See *Wolfe, supra*, 20 Cal.App.5th at pp. 682-683.) There is no indication that Juror Two prejudged that Munoz was guilty of murder. Indeed, Juror Two states in the first paragraph of the first letter that he or she "went into the courtroom wanting to find [Munoz] not guilty." Juror Two's assessment that Munoz was "not 'an innocent'" appears to refer to Juror Two's correct conclusion that Munoz previously had broken laws prohibiting driving while intoxicated. (Italics and boldface omitted.)

In the second section of the letter identified by Munoz, Juror Two wrote, "Some of us did entertain reasonable doubt, but most found [Munoz] guilty more because of their reaction to the brutal death of [Krpikyan] and not, necessarily, the details of the Law! [My opinion']." (Final brackets and apostrophe in original.) Munoz argues this indicates that "the emotional nature of the case may have improperly swayed the jury's verdict."

The trial court, in denying Munoz's request to release juror information, identified the above section of the letter as "[t]he closest thing to misconduct," but noted Juror Two's statement that it was Juror Two's "opinion," with no specific details in support. We agree with the trial court that Juror Two's opinion alone, with no additional evidence, is "speculative" and "unsupported," and the trial court did not abuse its discretion in finding it insufficient to establish good cause to release sealed juror information. (*Cook, supra*, 236 Cal.App.4th at p. 346; see also *People v. Danks* (2004) 32 Cal.4th 269, 302 [declarations pertaining to " ' "subjective reasoning processes of the individual juror" ' " inadmissible to prove juror misconduct; " ' "[t]his limitation prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent" ' "].)

Munoz argues that Juror Two forfeited any right to privacy by writing to the trial court and requesting to meet with the judge. We disagree. In writing the letter to the trial court, Juror Two did not reveal his or her contact information to anyone who did not already have it. The letters were not directed to the parties, who obtained the letters from the trial court with the identifying information redacted. The trial court did not abuse its discretion by preserving Juror Two's confidentiality despite the letters.

## F.    Admission Of A Photograph Of Munoz Smiling Did Not Result In A Miscarriage Of Justice

Munoz argues the trial court should have excluded a photograph of him smiling during his arrest under Evidence Code section 352, which grants courts the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." We review a trial court's determination under Evidence Code section 352 for abuse of discretion, and will reverse only if " ' " 'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Jones* (2017) 3 Cal.5th 583, 609 (*Jones*).) Under that standard, we reject Munoz's challenge.

### 1.    Additional background

Munoz filed a motion in limine in the trial court to exclude a photograph of himself. In the photograph, Munoz appears to be smiling at the camera. His arms appear to be behind his back and a CHP officer is standing directly behind him. Munoz argued

31

that the photograph was irrelevant, particularly because it was taken before Munoz knew he had killed someone, and that it was unduly inflammatory.

During the hearing on the motion, the prosecution argued that the photograph was relevant to show that Munoz was intoxicated, as indicated by his "bloodshot and watery" eyes, but still conscious and aware enough to respond to the "social cue" of his picture being taken, despite his intoxicated state. The prosecution argued this was relevant to contest Munoz's anticipated defense that because of "alcoholic blackout" and sleep deprivation, he was unable to form the requisite intent for murder.

The trial court denied the motion, finding the photograph "relevant to the extent of [Munoz's] intoxication." The trial court stated that "[w]hen people are intoxicated, they sometimes act inappropriately under the circumstances. And if this were a smile, indeed, one can attribute the inappropriate behavior to his degree of intoxication."

The prosecution introduced the photograph at trial.

### 2. Analysis

We decline to address whether the trial court erred in admitting the photograph, because any such error did not result in a " ' " 'manifest miscarriage of justice.' " ' " (*Jones*, *supra*, 3 Cal.5th at p. 609.) We deem any error in applying Evidence Code section 352 harmless "unless a different result would have been reasonably probable" had the trial court not made the error. (*People v. Marks* (2003) 31 Cal.4th 197, 222, 226-227.)

As we have discussed, evidentiary factors supporting conviction for a *Watson* implied malice murder include

" '(1) blood-alcohol level above the .08 percent legal limit; (2) a predrinking intent to drive; (3) knowledge of the hazards of driving while intoxicated; and (4) highly dangerous driving.' " (*Wolfe, supra*, 20 Cal.App.5th at pp. 682-683.) Most of these factors were overwhelmingly present here. Munoz admitted that he was well aware of the hazards of driving while intoxicated, given his earlier conviction for driving under the influence and the subsequent required safety classes. Despite this knowledge, he made the decision to drive after drinking enough to raise his blood alcohol level to two-and-a-half times the legal limit. (See Veh. Code, § 23152, subd. (b).) His driving was unquestionably highly dangerous; rather than take extra care to account for his reduced faculties, he drove at almost 100 miles per hour down the freeway, zigzagging and forcing other motorists to move out of his way, and did not apply his brakes before colliding with Mahan's truck. In light of this strong evidence of conscious disregard for the lives of others, we do not think it reasonably probable the photograph affected the jury's verdict.

## DISPOSITION

The judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

BENDIX, J.

We concur:

JOHNSON, Acting P. J.

CURREY, J.*

---

\* Associate Justice of the Court of Appeal, Second Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.