Filed 3/9/22  P. v. Castrejon CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GABINO CASTREJON, <br><br> Defendant and Appellant. | F078934 <br><br> (Super. Ct. No. F18904134) <br><br><br> **OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Timothy A. Kams, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Hill, P. J., Franson, J. and Meehan, J.

Following a jury trial, defendant Gabino Castrejon was convicted of two counts of forcible rape of a child over the age of 14, and one count of a lewd act with a child under the age of 14. Defendant now contends the trial court committed prejudicial and/or constitutional error when it failed to instruct the jury on the lesser crime of unlawful sexual intercourse with a minor, as defined by Penal Code section 261.5.[1] Defendant further notes the sentencing minute order and the abstract of judgment both reflect an incorrect number of local conduct credits. While we agree there are errors in the abstract of judgment and the minute order, we do not agree defendant was harmed by the lack of an instruction for unlawful sexual intercourse. We remand for a correction of the errors related to sentencing and affirm in all other respects.

## FACTS

Defendant and Jane Doe were related, and Jane would often visit defendant overnight. Jane stopped visiting defendant because of conduct he asked her to engage in. Eventually, defendant begged Jane to visit him again and she felt pressured to go. Each time she visited defendant, he would ask her to "do it" and she would tell him " 'No. No. [We're related].' "

Jane testified that the first time she remembered having sexual intercourse with defendant was when she was 15 or 16. Defendant took her to a hotel, explaining that he did not have a place for them to sleep. She was angry that she was being taken to a hotel. She testified that she just wanted to sleep, but defendant "got on top of [her]," prompting her to say " '[n]o' " and to cry. Jane kept telling defendant " '[n]o' " and to " '[g]et off,' " while he used force to prevent her from moving. Jane testified she was crying as defendant "put it in," but she was unable to do anything, as she was in shock and scared.

---

[1] All subsequent statutory references are to the Penal Code.

Jane testified defendant took her virginity on that day,[2] but told no one because she was scared.

After defendant moved to a house in Fresno, this type of activity continued when Jane visited him overnight. When asked to go into detail about these additional episodes, she testified it happened a couple more times after defendant moved to the new home. Jane explained that on at least one occasion, defendant tried to bribe her with money to engage in sexual activity. Jane told law enforcement that during this time period defendant penetrated her vagina with his penis approximately three to five times. Officer Ruben Ozuna reported Jane told him about the additional sexual encounters that occurred at the home in Fresno.[3]

Jane gave birth to a baby in March 2018. A DNA test revealed there was an extremely high probability defendant was the biological father of the baby.[4]

*Defense Evidence*

Defendant testified he never raped Jane. He also denied using force to have sex with Jane. Defendant also denied bribing her for sex. While defendant admitted to one sexual encounter with Jane, he denied it involved violence. During the prosecution's cross-examination, defendant again admitted he had sex with Jane once.

---

[2]    The record is very vague on the exact dates when these sexual encounters occurred. Because this incident is described as the first time when she was 15 or 16, and the evidence indicates it happened before he moved to Fresno, we conclude this incident falls within the time frame of count 1 (December 27, 2015, through December 26, 2016). During this time period, Jane was 15 years old.

[3]    Again, no exact dates were provided, but this activity seems to have occurred during the time frame laid out in count 2 of the information (December 27, 2016, through July 30, 2017). This is also consistent with the time period when defendant was living in the Fresno house.

[4]    We note that March 2018 is approximately eight months after July 30, 2017, the end of the period specified in the information in count 2 alleged against defendant.

The defense provided additional testimony from Yasmin Mejia, a defense investigator who interviewed Jane and her mother. During an hour-long conversation with Jane, Jane told Mejia she "consented" to sex with defendant five times, but then immediately said "no" to him. Mejia also testified that Jane told her defendant would show up at her house and beg her to come visit him. Jane told Mejia that on one such visit defendant put his penis into her vagina, and that she was a virgin at that time. Jane felt she could not say "no" because she feared defendant would yell at her. Jane also told Mejia that she would occasionally hit or push defendant and tell him to stop.

### The Verdict

On February 4, 2019, the jury returned verdicts of guilt on counts 1 and 2 (forcible rape of a child 14 years or older; § 264, subd. (c)(2)), and count 4 (lewd act on a child under the age of 14; § 288, subd. (a)).[5]

## DISCUSSION

Defendant raises several issues, which are interconnected. Most issues raised by defendant concern the question of whether there was a need for a jury instruction on unlawful sexual intercourse. Defendant specifically contends the trial court was required to provide this instruction, because it was a necessarily included lesser offense in this case. Moreover, the failure to give the instruction violated his constitutional right to due process and to present a defense under both federal and state law, ultimately impacting his right to a fair trial. Defendant believes this error cannot be deemed harmless and requires a reversal of his conviction. Finally, defendant challenges the accuracy of the abstract of judgment prepared in this case, arguing it misstates the number of local conduct credits he has earned while in custody.

---

[5]    Defendant has not challenged the jury verdict on count 4.

**I.** **Unlawful Sexual Intercourse Is Not a Necessarily Included Lesser Offense of Forcible Rape**

Defendant contends the trial court was required to instruct sua sponte on the offense of unlawful sexual intercourse with a minor (§ 261.5) because it qualified as a necessarily included lesser offense of forcible rape (§ 261, subd. (a)(2)) under the accusatory pleading test. Defendant correctly notes we apply a de novo standard of review when considering whether a trial court failed to instruct on a necessarily included lesser offense. (*People v. Licas* (2007) 41 Cal.4th 362, 366.)

**A.** **Applicable Law**

Even without a request from the defense,[6] a trial court is required to provide an instruction for a lesser offense " 'necessarily included in the charged offense' " when substantial evidence exists in the record showing the defendant is guilty *only* of the lesser crime. (*People v. Alvarez* (2019) 32 Cal.App.5th 781, 786 (*Alvarez*).) A court will decide whether a crime is a necessarily included lesser offense by either considering the statutory elements of the greater offense, or by considering the facts alleged in the accusatory pleading. (*People v. Smith* (2013) 57 Cal.4th 232, 240 (*Smith*).) When using either test, the court must conclude the greater offense cannot be committed without also committing the lesser offense. (*Ibid.*)

**1.** **The Elements Test**

When applying the elements test, it is easy to conclude unlawful sexual intercourse, as defined in section 261.5, is not a necessarily included lesser offense of forcible rape, as defined in section 261. Forcible rape "is an act of sexual intercourse accomplished … [with] a person who is not the spouse of the [perpetrator]" when "accomplished against a person's will by means of force, violence, duress, menace, or

---

[6] The record lacks any evidence defendant ever requested the court give an instruction on unlawful sexual intercourse.

fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).) Unlawful sexual intercourse is "an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor."[7] (§ 261.5, subd. (a).)

The greater offense of forcible rape does not require that the victim be a minor. As a result, forcible rape can be committed without also committing the lesser crime of unlawful sexual intercourse as defined by section 261.5. (See *Smith*, *supra*, 57 Cal.4th at pp. 240–241.) Accordingly, under the elements test, the trial court in this case had no sua sponte duty to instruct the jury on the crime of unlawful sexual intercourse.

### 2. The Accusatory Pleading Test

To be successful here, defendant must show the crime of unlawful sexual intercourse is a necessarily included lesser crime of forcible rape under the "accusatory pleading" test. When considering this test, the court is only required to examine the accusatory pleading—in this case, the information. (*People v. Woods* (2015) 241 Cal.App.4th 461, 473.)

As explained by the Supreme Court in *People v Montoya* (2004) 33 Cal.4th 1031 (*Montoya*), when using the " 'accusatory pleading' " test, the court considers only whether the charging allegations contain language " ' " 'describing the offense in such a way that if committed as specified,' " ' " a lesser offense is necessarily committed at the same time. (*Id*. at p. 1035.) Courts have noted over the years that this test protects a defendant's right to due process by providing the accused with adequate notice before being convicted of a lesser offense. (*Id*. at p. 1035; see *Alvarez*, *supra*, 32 Cal.App.5th at p. 788 [discussing the dangers of reaching beyond the accusatory pleading].) However, a trial court must only look to the accusatory pleading when applying the accusatory

---

[7] Under § 261.5, a "minor" is defined as a person under the age of 18 years.

pleading test. (*Smith*, *supra*, 57 Cal.4th 232, 244.) The test "does not require or depend on an examination of the evidence adduced at trial." (*Ibid*.)

Defendant relies on *People v. Ortega* (2015) 240 Cal.App.4th 956 to argue a preliminary hearing transcript may be considered when applying the accusatory pleading test. (*Id*. at p. 969.) The *Ortega* court felt the transcript was an "integral" part of the accusatory procedure because it was consistent with a defendant's due process right to notice, which may also be developed during the preliminary hearing. (*Ibid*.)

However, in 2019 the *Alvarez* court concluded the analysis in *Ortega* was contrary to language provided by our Supreme Court in *Montoya*, which held when using the accusatory pleading test, the court should consider only the pleading for the greater offense. (*Alvarez*, *supra*, 32 Cal.App.5th at pp. 787–788; *Montoya*, *supra*, 33 Cal.4th at p. 1036.) This conclusion is also consistent with *People v. Hicks* (2017) 4 Cal.5th 203, which held there is no requirement that "every possible crime a defendant may have committed be presented to the jury as an alternative." (*Id*. at p. 211.) Instead, a jury must only be instructed on offenses charged by the prosecution, either explicitly or implicitly.[8] (*Ibid*.) We agree with *Alvarez*, and thus decline to follow the approach taken by the *Ortega* court. (See *Alvarez*, *supra*, 32 Cal.App.5th at p. 788; *People v. Macias* (2018) 26 Cal.App.5th 957, 964; *People v. Munoz* (2019) 31 Cal.App.5th 143, 158.)

**B.    Application of the Accusatory Pleading Test**

Because we are bound by the precedent provided by the Supreme Court in *Montoya* and *Hicks* when applying the accusatory pleading test, we will limit our review

---

[8]    The Supreme Court in *People v. Birks* (1998) 19 Cal.4th 108, 129 recognized the important role the prosecution plays in making decisions about charging a crime, and the strategic chances taken when pursuing a greater offense alone, without the security of a lesser related offense that might be easier to prove.

to the charging allegations contained in the information. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

The information filed on November 1, 2018, alleged defendant committed rape in violation of sections 261, subdivision (a)(2) and 264, subdivision (c)(2) when he

> "willfully and unlawfully … [committed] an act of sexual intercourse with Jane Doe, a minor 14 years of age or older, not his spouse, and did accomplish said act against said victim's will, by means of force, violence, duress, menace or fear of immediate or unlawful bodily injury on said person …."

Count 1 of the information used this language to charge the commission of this crime between December 27, 2015, and December 26, 2016. Count 2 of the information used the same language to charge the commission of this crime between December 27, 2016, and July 30, 2017. Both counts alleged the crime was committed with "force, violence, duress, menace or fear of immediate or unlawful bodily injury …."

Again, language in the information charging both counts 1 and 2 address Jane's age, but says nothing about defendant's age. The reference to Jane's age is in connection to the punishment defendant would receive if he was found guilty of committing forcible rape, as defined by section 261, subdivision (a)(2). (§ 264, subd. (c)(2).) Nowhere in the information is defendant's age alleged, which is necessary for the lesser crime of unlawful sexual intercourse.[9] (§ 261.5; *People v. Woods*, *supra*, 241 Cal.App.4th 461, 473.)

Using the accusatory pleading test, we find unlawful sexual intercourse, as defined by section 261.5, was not a necessarily included lesser offense of forcible rape as defined by section 261, or as alleged in the information in counts 1 and 2. Any evidence defendant may have offered during his testimony to support the lesser charge did not

---

[9] Section 264, which was cited in the information, makes no reference to section 261.5. Instead, it defines the punishment only for the crimes committed under section 261 (forcible rape) or former section 262 (rape of a spouse).

trigger any responsibility by the court to instruct the jury on the crime of unlawful sexual intercourse. (See *People v. Hicks*, *supra*, 4 Cal.5th at p. 211.)

Because we find the trial court did not err, we must also conclude defendant was not denied due process under either the federal or state constitutions to present a defense or to receive a fair trial.[10]

## C. Even If the Court Was Required to Provide an Instruction on a Lesser Offense, the Error Was Harmless.

In California, when the defendant in a noncapital case challenges a court's failure to provide an instruction for a lesser included offense, the defendant must show the error resulted in a miscarriage of justice after reviewing the entire record of the trial. (*People v. Breverman* (1998) 19 Cal.4th 142, 173.) An error warrants reversal only if after a review of the entire record a reasonable probability exists the defendant would have received a more favorable result without the error. (*Id.* at pp. 174–176; *People v. Watson* (1956) 46 Cal.2d 818, 836.) In this setting, a " ' "reasonable probability" ' " means a " 'reasonable chance, more than an abstract possibility.' " (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1055.)

Arguing reversible error, defendant contends his testimony provided "substantial evidence," supporting the need for the instruction to the jury on the crime of unlawful sexual intercourse. Defendant testified he engaged in only one act of sexual intercourse with Jane, and that it was consensual. Defendant additionally points to testimony provided by Mejia, who interviewed Jane. However, a reading of that testimony shows that while Jane told Mejia she initially consented to defendant's request about five times,

---

**10** If the theory that Jane consented to sexual intercourse was so central to defendant's defense, why was no request made to the court for the instruction on unlawful sexual intercourse? Both parties submitted requests for jury instructions, yet the record provided to this court shows that no request was made by defendant for the instruction he now contends was necessary.

she also told Mejia she then said "no" immediately thereafter.  It is not possible to focus on just one part of the testimony Mejia provided without also considering the larger context of the testimony, in which Mejia reported Jane said she withdrew her consent each time.

By convicting defendant of both counts of forcible rape, the jury necessarily rejected defendant's characterization that he and Jane only engaged in consensual sexual intercourse once, and found instead that defendant engaged in unconsented, forced sexual intercourse with Jane at least twice.  The lack of consent and the use of force were necessary elements of the crime of forcible rape.  (§ 261.)  Additionally, the jury was specifically instructed it would have to acquit defendant of any charge for which evidence did not support an element of the crime as charged, such as the lack of consent. (CALCRIM No. 3500.)

Based on our review of the entire record as required by the court in *Breverman*, we cannot conclude there was a reasonable probability defendant would have received a more favorable result had an instruction on the lesser offense of unlawful sexual intercourse been given.  Any resulting error, therefore, was harmless.

## IV. The Errors in the Abstract of Judgment and the Minute Order Must Be Corrected.

On March 6, 2019, defendant was sentenced to 20 years in prison as follows: nine years each for counts 1 and 2, and two years for count 4.  Defendant correctly notes the trial court also awarded him 259 days of presentence confinement credit, with another 38 days of local conduct credit,[11] resulting in a total of 297 days of credit.[12]

---

[11]    The abstract of judgment and the minute order in this case use different names for this type of good conduct credit.  To avoid confusion, we will use the phrase "local conduct credit" as it appears in the abstract of judgment.

[12]    Defendant's ability to earn these credits is capped at 15 percent under section 2933.1, because he was convicted of a violent felony.

Our review of this issue focuses on the "FIRST AMENDED ABSTRACT OF JUDGMENT" filed and dated on March 8, 2019, and the "Second Corrected Minute Order." While both documents list defendant's sentence correctly as equaling 20 years, both also contain the same error listing only three days instead of 38 days for local conduct credits earned at the time of sentencing.

An appellate court may direct a trial court to correct this type of error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We will, therefore, remand with instructions to correct the "FIRST AMENDED ABSTRACT OF JUDGMENT," and the "Second Corrected Minute Order," to reflect the proper number of local conduct credits earned by defendant at the time he was sentenced on March 6, 2019.

## DISPOSITION

This matter is remanded to the trial court with instructions to correct the "FIRST AMENDED ABSTRACT OF JUDGMENT" filed on March 8, 2019, and the "Second Corrected Minute Order" from March 6, 2019, to accurately reflect defendant earned 38 days of local conduct credit at the time he was sentenced. Once these corrections are made, the trial court shall forward an amended abstract of judgment to the appropriate authorities. In all other respects, the judgment is affirmed.